CLINTONVILLE TRANSFER LINE, INC., Respondent, vs. PUBLIC SERVICE COMMISSION, Appellant.

*May 17—December 4, 1945.*

60

62

64

For the appellant there were briefs by the *Attorney General* and *H. T. Ferguson,* assistant attorney general, and oral argument by *Mr. Ferguson.*

For the respondent there were briefs by *Rieser & Mathys* of Madison, and oral argument by *C. G. Mathys*.

ROSENBERRY, C. J.  The circuit court reversed the findings of the commission on the ground that they are unsupported by substantial evidence and are arbitrary and capricious.  (Sec. 227.20 (1) (d), Stats.)  The circuit court pointed out that as shown by Exhibits 1 and 2, the new route will save the applicant and the shippers thirty-six per cent in the mileage between Wausau and Antigo, thirty per cent between Wausau and Phlox, practically forty per cent between Wausau and Aniwa, over thirty-six per cent between Wausau and Elmhurst, thirty-three per cent between Wausau and Mattoon, and almost twenty-four per cent between Wausau and Neopit, and that these savings in mileage represent a corresponding saving in rates to the shipper, because the rates are based upon mileage as shown by their certificated routes.  See Exhibit 2 set out in the statement of facts.

The court further pointed out that the applicant is an existing carrier, not an applicant asking to serve one single new point on the map which is not served by it already, and that the applicant seeks to cut down its line of travel.

The court further said:

"We do say that, on the record, there is an utter dearth of evidence to support the commission's conclusion in this regard."

We think it should be further pointed out that although the commission filed an opinion, nearly ten printed pages in length, it does not appear by the opinion that it gave any consideration whatever to the points served by the applicant beyond Antigo. In this case the interests of these points certainly represent at least a part of the public interest and it would seem that the improved service and lowered rates to these points ought to be controlling as against any duplication of service as between the applicant and the objector, the Pope Brothers Red Top

Cab Company. Unless there is some obstacle or hidden reason which we do not detect, why this duplication of service should not be allowed, then we see no reason why the commission should not, in the interest of the other points to be served, disregard its self-imposed limitation of its power and grant the applicant permission to travel over Route 52 for convenience without a change of rates. It appears to us that the conclusion reached by the commission sacrifices public necessity and convenience for the sole purpose of favoring another carrier. It does not appear that the revenue derived from the service between Antigo and Wausau is the sole source of revenue of the objector. No doubt it constitutes but a very small fraction of that revenue, one so small that it might well be ignored, or if it is so large as to be of such importance as to make it determinative of the matter, that permission might be granted without change of rate between Antigo and Wausau. We concur in the view of the circuit court that the conclusion reached is not supported by substantial evidence, and we conclude further that the denial of the application was based in part on nonstatutory grounds.

The record in this case presents some of the most baffling and complicated questions that arise under our system of constitutional law. These relate to the extent to which legislative power may be delegated to administrative agencies and how far the exercise of those powers by administrative agencies is subject to review by the courts. While these questions have been before the legislatures and courts of this country ever since the adoption of the Interstate Commerce Act in 1887, many of them still remain unsolved. It may be helpful to state a few fundamental propositions which are generally agreed upon.

1. The power to declare whether there shall be a law; to determine the purpose or policy to be achieved by the law; and to fix the limits within which the law shall operate is vested

in the legislature and may not be delegated, but when the legislature has laid down the fundamentals of the law, it may delegate to administrative agencies such legislative powers as may be necessary to carry into effect the general legislative purpose.

2. The powers exercised by administrative agencies are legislative and not judicial in their nature.

3. If in the exercise of delegated power the constitutional rights of a citizen are impaired, his rights will be protected by a court.

4. So long as an administrative agency acts within the scope of the powers granted to it without impairing the constitutional rights of a citizen, its findings of fact are subject to review by the courts only to the extent and in the manner prescribed by the legislature.

5. It is not competent for the legislature, even in a circumscribed field, to grant to an administrative agency unlimited legislative power. The power granted must be exercised in accordance with standards and limitations fixed by the legislature.

6. If no appeal or comparable procedure is prescribed for review, none exists. In the absence of legislative authorization to review the facts, administrative determinations can be reviewed only by *certiorari,* in which only questions of law are raised.

As regards the subject matter of this litigation, the Public Service Commission is empowered to issue licenses to motor carriers upon application. The statute provides:

Sec. 194.23 (1) ". . . The commission, upon the filing of an application for a certificate, or for an amendment thereto involving establishment or abandonment of service at any city or village shall fix a time and place for hearing thereon, and shall cause notice of such hearing to be given not less than ten days prior to such hearing in such manner as the commission may prescribe. The commission shall have power, as

the public interest may require, upon a finding of public convenience and necessity, to issue or refuse any such certificate or amendment or to issue it for the partial exercise only of the privilege sought. The commission may attach to the exercise of the privilege granted by such certificate or amendment such terms and conditions as in its judgment the public interest may require and as are permitted under this chapter. Before granting a certificate or amendment the commission shall take into consideration existing transportation facilities in the territory proposed to be served, including common and contract motor carriers and steam and electric railways."

Further regulatory powers are granted to the commission by sec. 194.18, Stats., which it is not necessary for us to consider in connection with this case.

It is apparent that the commission construes the language:

"The commission shall have power, as the public interest may require, upon a finding of public convenience and necessity, to issue or refuse any such certificate or amendment or to issue it for the partial exercise only of the privilege sought,"

as meaning that it is wholly within the discretion of the commission, even though public convenience and necessity may require it, to grant or deny a certificate. The conclusion that the commission so regards it is based upon the fact that in this proceeding the commission finds that granting a route for convenience purposes without requiring the use of such route for rate-making purposes is a violation of the spirit, if not the letter, of the general rate order which bases rates of common motor carriers on their certificated mileages so that rates truly will reflect actual operating costs and denies the petition. We find no statutory authority by virtue of which the Public Service Commission may make orders limiting the exercise of its own statutory powers.

While by sec. 195.03 (1), Stats., the commission is given power—

"to adopt rules to govern its proceedings and to regulate the mode and manner of all investigations and hearings,"—

this provision does not confer upon the commission power to enlarge or limit its own power. There is a wide constitutional gap between an order regulating procedure before the commission and an order which operates to limit the exercise of the statutory powers of the commission. The first is made in the exercise of a power delegated to it by the legislature. The power to limit or prescribe the field of action of an administrative agency is the kind of legislative power that cannot be delegated. What the commission did in this instance is to enact a rule which within the prescribed field and as administered by the commission operates in certain cases to deny an applicant a certificate for no statutory reason. The granting of certificates is a power exercised under one legislative grant and the rate-making power is entirely different in its nature and is granted to the commission under another section of the statutes. To the extent that the denial of the application was based upon this reason, it was arbitrary and unlawful. The power exercised by the commission must be exercised in accordance with some statutory standard fixed by the legislature or it constitutes the exercise of the kind of legislative power that cannot be delegated. The statute is subject to an interpretation which removes all questions as to its validity. Upon a finding that public convenience and necessity require it, the commission is to grant a certificate. If public convenience and necessity do not require it, the commission is to deny it. The legislature says that in one case the public interest requires it and in the other that it does not. If the words "as the public interest requires" be interpreted to mean that after the commission has found that public convenience and necessity require the issuance of a certificate, it then has an unlimited discretionary power to issue or refuse it, it is invalid. Such an interpretation makes the rights of an applicant for a certificate subject to the arbitrary power of the commission, a power which the legislature itself does not have. We still have in the law of this country, even in administrative law, such a thing as equality of citizens before the law. The

organic principle of equality includes within its application a granted privilege as well as a regulated right. *Rosenblum v. Griffin* (1938), 89 N. H. 314, 197 Atl. 701, 115 A. L. R. 1367. While the doctrine of classification has been extended so far that it minimizes the effect of the equality provision of the constitution of the several states and of the United States, no one has gone so far as to say that a right may be conferred upon one citizen and under identical circumstances may be denied to another.

It may be said that the standard fixed by the statute as a test whether a certificate should be issued is indefinite and uncertain. It is true that the words "public convenience and necessity" are not words of precise legal content. However, they have been employed in the statutory law and the decisions of the courts of this country for more than forty years and their meaning grows more definite and certain with the passing years.

This court first considered the meaning of these words in *Wisconsin Tel. Co. v. Railroad Comm.* (1916) 162 Wis. 383, 398, 156 N. W. 614. In the opinion a number of cases were cited from various jurisdictions and the court concluded with this statement:

"The term is relative rather than absolute. No definition can be given that would fit all statutes in which the word has been used. The meaning in a given case must be ascertained by reference to the context and to the objects and purposes of the statute in which it is found. If there was a strong or urgent need of the connection here sought, then there was a necessity for it, and the finding that necessity existed is not shown to be wrong or unreasonable by clear and satisfactory evidence."

In *United Parcel Service v. Public Service Comm.* (1942) 240 Wis. 603, 613, 4 N. W. (2d) 138, 5 N. W. (2d) 635, the matter was again adverted to and the court said:

"If there is a reasonable need apparent for the use of the service and if the common carrier is not unduly interfered with nor the public highways unduly burdened, a case of convenience and necessity exists." See also *Farmers Co-op. E. U. S. Asso. v. Public Service Comm.* (1944) 245 Wis. 143, 146, 13 N. W. (2d) 507.

In *Re Troy Auto Car Co.* P. U. R. Ann. 1917 A, 700, 707, the New York public service commission, speaking of necessity and convenience said :

"It is dangerous to undertake to formulate abstract definitions in deciding a concrete case, but we take it that for such purposes as are involved in this and similar applications, a public convenience and necessity exists when the proposed facility will meet a reasonable want of the public and supply a need, if existing facilities, while in a sense sufficient, do not adequately supply that need."

The most helpful comment upon the meaning of the words "convenience and necessity" is to be found in the opinion of the supreme court of the state of Utah, *Union Pac. R. Co. v. Public Service Comm.* (1943) 103 Utah, 459, 464, 467, 135 Pac. (2d) 915, 917. The court said :

"Necessity means reasonably necessary and not absolutely imperative. The convenience of the public must not be circumscribed by holding the term 'necessity' to mean an essential requisite. It is necessary if it appears reasonably requisite, is suited to and tends to promote the accommodation of the public. The statute should be so construed and applied as to encourage rather than retard the quality of the service rendered to the public to the end that both the quality and quantity of that which is offered to the public may be improved and increased. Any service or improvement which is desirable for the public welfare and highly important to the public convenience may properly be regarded as necessary. A service is not necessarily adequate because the community can conduct its business without further or additional service. To be adequate they must safeguard the people generally from appreci-

able inconvenience in the pursuit of their business. If a new or enlarged service will enhance the public welfare, increase its opportunities, or stimulate its economic, social, intellectual or spiritual life to the extent that the patronage received will justify the expense of rendering it, the old service is not adequate."

The court further said :

"We have repeatedly stated that 'convenience' and 'necessity' are not segregable and to be considered as separate terms, but must be construed together and constitute a joint concept, which must be construed and considered according to the whole concept and purpose of the act. As to what constitutes 'public convenience and necessity' must fundamentally have reference to the facts and circumstances of each given case as it arises, as the term is not, and was not intended to be, susceptible of precise definition." See also *In re Minneapolis & St. L. R. Co.* (1941) 209 Minn. 564, 297 N. W. 189.

If upon hearing the basic ultimate facts are found, it should not be difficult to apply the standard of public convenience and necessity prescribed by the legislature and make a proper determination. It may be noted that in no case that we have discovered, considering the question of public convenience and necessity, has the matter of rates been given weight.

We come now to the question of what the court may do in reviewing the determination of an administrative agency. We need not discuss here the extent to which the legislature may go in conferring legislative power upon an administrative agency without at the same time providing for a review of its determinations. Hardly any two states confer upon the courts the same powers of review. Therefore decisions from other states are not helpful in the solution of this question. For instance in *In re Consolidated Freight Co.* (1933) 265 Mich. 340, 251 N. W. 431, under the constitution of Michigan, an act of the legislature made the orders of the commission reviewable by the supreme court of the state both as to the law

and the facts. The court held that under the constitution of Michigan, the court could review only questions of law and that it was not competent for the legislature to confer additional jurisdiction upon the supreme court; therefore it could not review the facts. A minority opinion sets forth strong reasons why the supreme court should not review the determination of an administrative agency even as to the law.

We do not have that question here, as under the procedure prescribed by the legislature administrative findings are to be reviewed by the circuit court. Sec. 8, art. VII, of the constitution, provides:

"The circuit courts shall have original jurisdiction in all matters civil and criminal within this state, not excepted in this constitution, and not hereafter prohibited by law. . . ."

The review of administrative findings is certainly a civil matter. The legislature may therefore confer jurisdiction upon the circuit court in this regard and prescribe its extent. The legislature has adopted a carefully prepared program for administrative procedure and review.

Ch. 194, Stats., is entitled "Motor Vehicle Transportation Act."

Sec. 194.13, Stats., provides: "Orders and determinations made pursuant to this chapter shall be subject to review in the manner provided in chapter 227."

Ch. 227, Stats., is entitled "Administrative Procedure and Review."

Sec. 227.20, Stats., *"Scope of review.* (1) The review shall be conducted by the court without a jury and shall be confined to the record, except that in cases of alleged irregularities in procedure before the agency, testimony thereon may be taken in the court. *The court may affirm the decision of the agency, or may reverse or modify it if the substantial rights*

*of the appellant have been prejudiced* as a result of the administrative findings, inferences, conclusions or decisions being:

"(a) Contrary to constitutional rights or privileges; or

"(b) In excess of the statutory authority or jurisdiction of the agency, or affected by other error of law; or

"(c) Made or promulgated upon unlawful procedure; or

"(d) Unsupported by substantial evidence in view of the entire record as submitted; or

"(e) Arbitrary or capricious.

"(2) Upon such review due weight shall be accorded the experience, technical competence, and specialized knowledge of the agency involved, as well as discretionary authority conferred upon it. The right of the appellant to challenge the constitutionality of any act or of its application to him shall not be foreclosed or impaired by the fact that he has applied for or holds a license, permit or privilege under such act."

By this section it is provided in effect that administrative decisions are not to stand if the decisions prejudicially affect the substantial rights of an appellant. The substantial rights of an appellant are affected when the decision is contrary to his constitutional rights or privileges; in excess of the statutory authority or jurisdiction of the agency; the procedure is not in accordance with the law; *is not supported by substantial evidence; or is arbitrary or capricious.*

If the court on review finds the decision of an agency to be contrary to any of these provisions and prejudicial to the appellant, it is to be reversed, otherwise it is to be affirmed.

The grounds of review provided by sec. 227.20, Stats., are extensive and are provided for the obvious purpose of protecting the rights of parties who are required to apply to administrative agencies for licenses, permits, or other privileges under the statutes. Few if any statutes have come under our observation which prescribe broader or even as broad a scope of review as that prescribed by ch. 227, Stats.

When the matter is brought before this court on appeal from an order (the proceeding to review is a special proceeding) of the circuit court, the question presented is whether the circuit

court erred in its determination, this court in the exercise of its appellate jurisdiction does not reverse or modify the order of the commission. It deals with the order of the circuit court. In this case the circuit court found that in matters of fact the commission's findings were not supported by substantial evidence and that its determination was arbitrary and capricious. It was clearly within the jurisdiction of the circuit court to consider and determine these matters. The question presented, then, is whether the circuit court was in error. As already stated, we concur in the conclusion of the circuit court, upon this phase of the case.

However, so much of the judgment as directs the Public Service Commission to grant the application of the plaintiff cannot be affirmed. When a court reverses and vacates a decision of the commission, it does so in the exercise of a strictly judicial power. When it commands an administrative agency to exercise the powers conferred upon it by statute in a specified way, it in practical effect exercises legislative power. By ch. 194, Stats., the power to issue certificates to motor carriers is expressly conferred upon the Public Service Commission. This is concededly an exercise of delegated legislative power. If the court has jurisdiction to enter such a judgment, the commission has no alternative except to enter the order as directed. The power to issue is exercised by the court and not by the commission. It may be said that in some instances an applicant may be left without an efficient remedy if the agency should be contumacious. We must assume that public officials will perform their duties in accordance with the command of the legislature. In the experience of this state with administrative agencies covering a period of more than forty years, nothing of the kind has occurred although their powers were less circumscribed then than now.

The fundamental reason for the lack of the court's jurisdiction is that the legislature may not confer legislative power upon the judiciary. *In re Incorporation of Village of North*

*Milwaukee* (1896), 93 Wis. 616, 67 N. W. 1033; *United Shoe Workers, etc., v. Wisconsin L. R. Board* (1938), 227 Wis. 569, 279 N. W. 37; *School Dist. v. Callahan* (1941), 237 Wis. 560, 297 N. W. 407.

The same rule is adhered to by the supreme court of the United States. *Federal Power Comm. v. Pacific Power & Light Co.* (1939) 307 U. S. 156, 59 Sup. Ct. 766, 83 L. Ed. 1180. In *Securities & Exchange Comm. v. Chenery Corp.* (1943) 318 U. S. 80, 88, 63 Sup. Ct. 454, 87 L. Ed. 626, it was said:

"If an order is valid only as a determination of policy or judgment which the agency alone is authorized to make and which it has not made, a judicial judgment cannot be made to do service for an administrative judgment. For purposes of affirming no less than reversing its orders, an appellate court cannot intrude upon the domain which congress has exclusively entrusted to an administrative agency."

Our constitution does not expressly declare that one of the co-ordinate departments shall not exercise the powers of another; it is nevertheless implicit therein. In *Springer v. Philippine Islands* (1928), 277 U. S. 189, 201, 48 Sup. Ct. 480, 72 L. Ed. 845, the supreme court of the United States says:

"Some of our state constitutions expressly provide in one form or another that the legislative, executive and judicial powers of the government shall be forever separate and distinct from each other. Other constitutions, including that of the United States, do not contain such an express provision. But it is implicit in all, as a conclusion logically following from the separation of the several departments. [Citing.] And this separation and the consequent exclusive character of the powers conferred upon each of the three departments is basic and vital—not merely a matter of governmental mechanism."

While legislative power may be delegated to subordinate administrative agencies and municipal bodies, it cannot be delegated to or exercised by the judiciary.

While the distinction between the statutes which delegate legislative power and those which do not may seem shadowy, it is in fact substantial and fundamental. This is nowhere better illustrated than in our own decision. In *In re Incorporation of Village of North Milwaukee, supra,* the statute there held invalid was sec. 861, S. & B. Anno. Stats. 1889. The parts which were held by the court to delegate legislative power to the circuit court are italicized. The section is as follows:

"If the court after such hearing shall be satisfied of the correctness of any such survey or resurvey and census, that all the requirements of the statutes have been complied with; *that the lands embraced in such territory or any part thereof ought justly to be included in the proposed village; that the interest of the inhabitants will be promoted by such incorporation,* and that such territory as ought to be included contained, at the time such census was first or subsequently taken, the population, in number and in proportion to the quantity of land therein, required in section 854, it shall make an order declaring that such territory, the boundaries of which shall therein be set forth by courses and distances, *and which may be enlarged or diminished by such court from the boundaries specified in such application, as justice may require,* shall be an incorporated village by the name specified in such application, or by such other name as to the court shall deem proper, if the electors thereof shall assent thereto as hereinafter provided. . . ."

The court in its order found:

"The lands embraced in said territory *ought justly* to be included within the proposed village, *and that the interests of the inhabitants would be promoted by such incorporation."* (p. 619.)

The court held that in making the order of incorporation, the court was in the exercise of legislative power.

*In re Incorporation of Village of North Milwaukee, supra,* was decided in 1896. The section was amended by ch. 287, Laws of 1897, by striking out the italicized parts of the section.

Under the statute as amended, if the court finds that the requisite facts exist, the statute commands it to make the order. Under such a statute discretion is exercised by the legislature and not by the court.

This principle is fully elaborated in *Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.* (1908) 136 Wis. 146, 116 N. W. 905, sustaining the statute creating the railroad commission, enacted in 1905.

In *United Parcel Service v. Public Service Comm.* (1942) 240 Wis. 603, 4 N. W. (2d) 138, 5 N. W. (2d) 635, the mandate of this court directed the circuit court to modify the judgment so as to direct the commission to amend the license as prayed for and to modify the license as stipulated by petitioner, and as so modified, the judgment was affirmed. This procedure was followed in *Farmers Co-op. E. U. S. Asso. v. Public Service Comm.* (1944) 245 Wis. 143, 13 N. W. (2d) 507.

This case was also cited in *Gateway City Transfer Co. v. Public Service Comm.* (1944) 245 Wis. 304, 14 N. W. (2d) 6. These cases are not to be considered precedents so far as they indicate that the judgment of the court may be substituted for that of the commission. While they arose under different statutes, the principle involved is the same, and the issuance of the licenses should have been left to the discretion of the commission.

We find it necessary to advert to one other matter. The Public Service Commission is an agency within the definition of that term found in ch. 227, Stats., relating to administrative procedure and review and its proceedings are governed by the provisions of that chapter. It should proceed accordingly. Sec. 227.13, Stats., provides:

"Every decision of an agency in a contested case shall be in writing accompanied by findings of fact and conclusions of law. *The findings of fact shall consist of a concise and separate statement of the ultimate conclusions upon each contested issue of fact without recital of evidence.*"

In this case, after the controversy was submitted to it, the Public Service Commission wrote an opinion some ten pages in length. At the close, under the heading of findings, it stated its conclusions of law. Nowhere was there an attempt made to comply with the command of the statute as to findings of fact. The last sentence of sec. 227.13, Stats., is in legal effect a command to the Public Service Commission to conform to the decision in *Cointe v. Congregation of St. John the Baptist* (1913) 154 Wis. 405, 143 N. W. 180. In that case the trial court wrote a long opinion. The plaintiff's attorney drew what he .denominated findings of fact which consisted principally of a verbatim copy of a large part of the opinion, and closed with conclusions of law to the effect that there was no valid contract for the well originally made and that the evidence showed neither ratification nor estoppel on the part of the defendant. Of these findings, the court said (p. 416) :

"Considered as an opinion, the document is admirable and is really all that an opinion should be ; considered as a response to the statutory requirement that the trial judge should state in his decision 'the facts found by him,' it is all that such a response should not be."

The court then goes on to state what constitutes findings of fact, and gives an illustration by stating the ultimate facts in that case. With this decision before it, no agency should have any difficulty in preparing findings of fact which state the ultimate conclusions upon each contested issue of fact and do that without reciting the evidence. It is to be hoped that all administrative agencies will take note of and comply with the provisions of sec. 227.13, Stats.

*By the Court.*—So much of the judgment as vacates and sets aside the decision of the commission is affirmed. That part of the judgment which directs the issuance of the certificate is reversed, and the cause is remanded to the circuit court with directions to remit the record to the defendant for further proceedings according to law.

FAIRCHILD, J. (*dissenting in part*). I concur in the decision of the court in so far as it reverses the judgment of the circuit court, but am of the opinion that the mandate should direct the circuit court to confirm the order of the commission.

In determining whether a certificate of public convenience and necessity should issue, it is not just a matter of the length of a route nor that a time-saving schedule may be constructed. The question the commission must answer is: Is the public getting a service that in the commission's opinion after a review of the evidence is sufficient?

The statute reads: "The commission shall have power, as the public interest may require, upon a finding of public convenience and necessity, to issue or refuse any such certificate or amendment or to issue it for the partial exercise only of the privilege sought." Sec. 194.23, Stats. The powers thus granted to the commission are legislative in character.

The power of the state to limit the number of common carriers operating over highway routes springs from its power to regulate the use of highways and common carriers under the police power of the state. See *United Parcel Service v. Public Service Comm.* (1942) 240 Wis. 603, 4 N. W. (2d) 138, 5 N. W. (2d) 635; *Stoner v. Underseth* (1929), 85 Mont. 11, 277 Pac. 437; *Willis v. Buck* (1928), 81 Mont. 472, 481, 263 Pac. 982. In the latter case, the court says: "There is no inherent right to use a public highway in the conduct of the business of a common carrier for private gain without the consent of the state." Therefore, the legislature by statute may, itself, directly grant licenses to operate carriers or deny such right; and unless a constitutional right is violated by an unreasonable discrimination, for instance, there can be no further review by the judicial arm of the government. Or the legislature, in the interest of efficiency and convenience, may delegate the task of issuance of such licenses to an administrative commission. In so doing, the legislature is conferring upon the commission the authority to exercise its judgment in respect to the matters with which it has been en-

trusted by the legislature. When the commission acts in either denying or granting a certificate of public convenience and necessity, the review by the courts is limited under the Uniform Administrative Act to an inquiry as to whether the commission has exceeded its statutory authority or jurisdiction, whether the decision of the agency has been based upon unlawful procedure, or whether the decision is unsupported by substantial evidence or is arbitrary and capricious. Sec. 227.20, Stats. A fair construction of sec. 194.23, *supra*, is that in a case where public convenience and necessity clearly require the issuing of a certificate, it must issue. But the burden of proving a public convenience and necessity is upon the applicant. The burden is not on the objector to show by evidence that the public convenience and necessity does not require the issuing of the certificate. The facts in this case do show that from the point of view of certain shippers and the applicant itself, it would be convenient to allow applicant its certificate. But none of the evidence shows that the service now being provided by both the applicant or objector who now runs a common carrier over the proposed route, is insufficient. The most the evidence shows is that granting the certificate would result in a shortening of the time involved in shipping to various points by one to two hours. In *A. & T. Motor Freight v. Public Utilities Commission of Ohio* (1932), 125 Ohio, 617, 619, 184 N. E. 11, the court held, in affirming the commission's denial of application for a certificate of public convenience and necessity to operate a carrier over a route already served by others, that "Evidence that an applicant for a certificate to operate a trucking service for freight will render delivery an hour or two quicker than existing motor-transportation companies does not dispense with the statutory requirement that the applicant shall prove that public convenience and necessity require the service. Proof of convenience only does not constitute proof of necessity. A 'necessity' for motor-transportation service as contemplated by the Motor Transportation Act (Gen. Code, sec.

614–84 *et seq.*) is not synonymous with a 'convenience,' but is a definite need of the general public for a transportation service where no reasonably adequate service exists." In this case, there is no testimony that the denial of the certificate would in any way deprive the present shippers, or the general public, of adequate service. Although it may seem to the circuit court that, in the exercise of its discretion, the commission might better have decided to issue the certificate, the court cannot substitute its judgment for that of the commission. The legislature may act unwisely in exercising its powers. But the courts cannot, for that reason, interfere. Likewise the commission may act unwisely in refusing to grant a certificate of public necessity and convenience, but in so acting, unless it is in an area beyond the authority granted by its creator, the legislature, the courts cannot interfere. Where there is a showing of public convenience and necessity, it is obligatory upon the commission to issue a certificate. But where there is a mere showing of added convenience, the court cannot interfere. Although the statutes in other jurisdictions may differ, the general scheme of regulation is the same as in Wisconsin. And the cases in other jurisdictions support the above conclusions. See *Atchison, T. & S. F. Ry. Co. v. Public Service Comm.* (1930) 130 Kan. 777, 288 Pac. 755; *Railroad Comm. of Texas v. Shupee* (Tex. Civ. App. 1929), 57 S. W. (2d) 295; *Seaboard Air Line Ry. Co. v. Wells* (1931), 100 Fla. 1631, 131 So. 777.

When the court decides that the commission's action in denying a certificate is reversible because, in the judgment of the court, there is no evidence that it would not be more convenient to have an additional carrier operating on the particular route involved, it is clearly exercising a legislative function. Since, in this case, there is evidence that the existing service is adequate and satisfactory, the court cannot substitute its judgment as to the desirability of issuing the certificate. The commission's denial should be sustained.

I am authorized to state that Mr. Justice FOWLER concurs in this opinion.