CLINTONVILLE TRANSFER LINE, INC., Respondent, vs. PUBLIC SERVICE COMMISSION and another, Appellants.

*February 7—March 6, 1951.*

For the appellant Public Service Commission there were briefs by the *Attorney General* and *William E. Torkelson,* chief counsel of the commission, and oral argument by *Mr. Torkelson.*

*Glenn W. Stephens* of Madison, for the appellant Northern Transportation Company.

*Edward A. Solie* of Madison, for the respondent.

MARTIN, J. The law as applied to assignments of a franchise or authority is embodied in sec. 194.25 (2), Stats.:

"No right, privilege, certificate, or license under the provisions of this chapter shall be sold, assigned, leased, transferred, or mortgaged either by voluntary or involuntary action, except after a finding by the commission *that the same is not against the public interest."* (Italics ours.)

A new carrier going into business or adding duplicating service over an existing route is governed by sec. 194.23, Stats.:

". . . The commission, upon the filing of an application for a certificate, or for an amendment thereto involving establishment or abandonment of service at any city or village shall fix a time and place for hearing thereon, and shall cause notice of such hearing to be given not less than ten days prior to such hearing in such manner as the commission may prescribe. The commission shall have power, *as the public interest may require, upon a finding of public convenience and necessity,* to issue or refuse any such certificate or amendment or to issue it for the partial exercise only of the privilege sought. The commission may attach to the exercise of the privilege granted by such certificate or amendment such terms and conditions as in its judgment the public interest may require and as are permitted under this chapter. *Before granting a certificate or amendment the commission shall take into consideration existing transportation facilities in the*

*territory proposed to be served, including common and contract motor carriers and steam and electric railways."* (Italics ours.)

During the course of the hearing before the commission the representative of Clintonville Transfer Line, Inc., stated that "it is the intention of the vendee to render single-line service from all points on the Eastern Transportation routes on the one hand, and all Clintonville Transfer points on the other." The treasurer and manager testified that the unification of these two operations will not have any effect on certain restrictions that apply to either one of the present certificates. He gave specific examples as to what would or would not be operated single-line if the proposed assignment is approved. The president testified as to the equipment and facilities owned by the company and its condition together with plans for future operations, including expected savings due to discounts on the price of gasoline, tires, and repair parts. He estimated one hundred seventy-six miles of routes were involved in the Eastern Transportation authority, and twenty-nine miles duplicated their own route. The rest would be complementary.

After the representative for Clintonville Transfer Line concluded his presentation, and it was clear that its purpose is to operate the unified routes as a single-line carrier service, the examiner announced that applicant would have to prove public convenience and necessity, pursuant to the provisions of rule 72 (f) of the commission's General Order No. 2, Rules of Procedure and Practice, which provides:

"If an intrastate common motor carrier certificate is to be assigned to another intrastate common motor carrier which operates a connecting route and if it is proposed to operate the combined systems as a single through route, the application must be supported by evidence that public convenience and necessity require the through service."

Clintonville's representative stated he wished to note an exception to such statement of the issue; that they were proceeding under sec. 194.25 (2), Stats., and that their position was whether the proposed assignment of certificate of authority CC-94 was against the public interest.

Counsel for parties in opposition stated that they would call no witness "because there has been no showing of public convenience and necessity, and under rule 72 (f), the application must fail. Should it be decided that rule 72 (f) is held inapplicable or invalid at that time, we shall ask for further hearing and place witnesses on the stand. Mr. Solie said there is nothing to rebut and that is correct."

Clintonville's representative then stated that counsel for parties in opposition had misinterpreted his statement; that while there was nothing to rebut so far as convenience and necessity were concerned, there was an issue under sec. 194.25 (2), Stats., on the question of public interest, and objected to any delay in proceeding on that issue. After some further comment the hearing was closed.

By letter dated June 14, 1949, the representative for Clintonville wrote the Public Service Commission as follows:

"At the opening of the hearing held yesterday in the above matter Examiner Olson called the parties' attention to rule 72 (f) of your General Order No. 2, which he read, and then stated he would announce what the issue in the case is after hearing the evidence adduced by the parties.

"Since the vendee made it clear in its testimony that it is its purpose to operate the unified routes as a single-line carrier service, the examiner announced that applicant would have to prove public convenience and necessity, pursuant to the provisions of rule 72 (f). Applicant took exception to this ruling on the record, on the ground that the rule is in derogation of the statute, more particularly sec. 194.25 (2), Wis. Stats., under which the application in this matter was filed. It is applicant's position that the commission is without the power to promulgate such a rule as 72 (f), which clearly

invades the province of the legislature, and is, therefore null and void.

"This letter is written for the purpose of perfecting applicant's exception to the examiner's statement of the issue, as required by rule 35 (a) of your General Order No. 2."

In its order of September 20, 1949, the commission made the following findings of fact:

"1. That the proposed assignment of authority would result in the establishment of a new single-line common motor carrier authority.

"2. That such new authority cannot be issued without a finding by the commission that public convenience and necessity require the proposed operations.

"3. That public convenience and necessity does not require the through single-line service which would result if the proposed assignment is approved.

"4. That the proposed assignment of the aforesaid certificate of authority is against the public interest."

We hold here that rule 72 (f) is an invalid rule but, in view of the manner in which the parties presented the case to the commission and our decision in this matter, we are remanding the record to the commission for further proceedings in accordance with law.

The effect of rule 72 (f), as applied by the commission in this proceeding, is to require respondent to submit proof *that public convenience and necessity require the through service* that would result from the unification of the operating routes of Eastern with the routes of Clintonville; and also establish, pursuant to sec. 194.25 (2), Stats., *that the same is not against the public interest.* This reflects a dual requirement which is not a statutory requirement in an assignment proceeding. The commission has power, under sec. 195.03 (1), to promulgate its own rules for procedure and practice but rule 72 (f) goes beyond the scope of that section. It is stated in *Clintonville Transfer Line v. Public Service Comm.* (1945), 248 Wis. 59, 70, 21 N. W. (2d) 5:

"While by sec. 195.03 (1), Stats., the commission is given power—'to adopt rules to govern its proceedings and to regulate the mode and manner of all investigations and hearings,' —*this provision does not confer upon the commission power to enlarge or limit its own power.* There is a wide constitutional gap between an order regulating procedure before the commission and an order which operates to limit the exercise of the statutory powers of the commission. The first is made in the exercise of a power delegated to it by the legislature. The power to limit or prescribe the field of action of an administrative agency is the kind of legislative power that cannot be delegated. *What the commission did in this instance is to enact a rule which within the prescribed field and as administered by the commission operates in certain cases to deny an applicant a certificate for no statutory reason."* (Italics ours.)

The commission must approve an assignment if the same is not against the public interest. The legislature fixed the standard in enacting sec. 194.25 (2), Stats. In other words, if Clintonville took over the authority of Eastern and did not link up the two routes so as to create any new operating routes, but continued the operations as each did previously in joint-line service, the applicant would only have to prove that the same is not against the public interest.

However, in the instant proceeding authority to perform a certain service is allegedly being transferred but, *in addition,* a new operating right is being created. Clintonville has authority to haul property from point X to point Y. Eastern has authority to haul from point Y to point Z. By combining the systems, Clintonville would have authority to haul single-line from X to Z, for example, authority which neither carrier previously had. The assignment would not only transfer existing rights but would create new ones and hence a new competitive situation between existing services.

In order for Clintonville to serve single-line between points on Clintonville's routes and points on Eastern's routes, which would mean an operation, single-line, over routes and be-

tween points not now granted to Clintonville under certificate of authority CC-238 or Eastern under certificate of authority CC-94, it would be necessary, after securing the transfer, to file an application for an amendment to its certificate, pursuant to sec. 194.23, Stats., for this additional service. That section provides in part that the commission shall have power, as the public interest may require, upon a finding of public convenience and necessity, to issue or refuse any such amendment or to issue it for the partial exercise only of the privilege sought; and before granting an amendment the commission shall take into consideration existing transportation facilities in the territory proposed to be served, including common and contract motor carriers and steam and electric railways.

*By the Court.*—Judgment affirmed.