Thomas BAER, Petitioner-Respondent,†

v.

WISCONSIN DEPARTMENT OF NATURAL RESOURCES,
Respondent-Appellant.

Court of Appeals

*No. 2005AP668. Oral argument January 17, 2006.
—Decided October 12, 2006.*

**2006 WI App 225**

(Also reported in 724 N.W.2d 638.)

† Petition to review filed denied 3/14/07.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Philip Peterson*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general. There was oral argument by *Philip Peterson*.

On behalf of the petitioner-respondent, the cause was submitted on the brief of and oral argument by *Michael R. Fitzpatrick* of *Brennan, Steil & Basting, S.C.*, Janesville.

A nonparty brief was filed by *Thomas D. Larson* and *Debra P. Conrad* of *Wisconsin Realtors Association*, Madison.

A nonparty brief was filed by *William P. O'Connor* and *Mary Beth Peranteau* of *Wheeler, Van Sickle & Anderson, S.C.*, Madison, for Wisconsin Association of Lakes.

Before Vergeront, Deininger and Higginbotham, JJ.

¶ 1. DEININGER, J. The Wisconsin Department of Natural Resources appeals a judgment that vacated two administrative orders and dismissed the Department's enforcement action against two allegedly oversized piers situated on a lake in northern Wisconsin. The circuit court concluded that WIS. ADMIN. CODE § NR 326.02(2) (Aug. 1991) precludes the Department from bringing the enforcement action because no third party had complained about the piers and the pier owner had neither sought information nor applied for a permit from the Department. We conclude that the cited rule cannot and does not deprive the Department of its statutory authority under WIS. STAT. § 30.03(4)

(2001–02)[1] to seek an order under that section "to fully protect the interests of the public in the navigable waters" of this state.

¶ 2. We also conclude, however, that, under the plain language of WIS. ADMIN. CODE § NR 326.02(2), the provisions of WIS. ADMIN. CODE ch. NR 326 do not apply in the present action. Because the administrative law judge who issued the vacated orders relied in part on provisions in ch. NR 326 to conclude that the piers were too big, we remand to the Division of Hearings and Appeals for "further action under a correct interpretation of the . . . law." *See* WIS. STAT. § 227.57(5).

## BACKGROUND

¶ 3. Thomas and Michele Baer own property on Alder Lake in Vilas County. They placed or maintained two structures on the lake: one on the southern end of their shoreline and the other on the northern side. In November 1999, a water management specialist from the Department of Natural Resources visited the area to inspect a permanent boat shelter the Baers had built on their property. In the process of viewing the boat shelter, the specialist observed the two piers. She believed the piers exceeded the dimensions allowed by the Department without a permit. A week later, she sent a letter that notified the Baers of the alleged pier violations, asked them to reduce the size of their piers and enclosed the Department's "Pier Planner," which the specialist said "explains the state regulations and guidelines regarding piers."

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

¶ 4. The Baers did not take the requested action and the Department commenced this enforcement action in March 2001. WISCONSIN STAT. § 30.03(4)(a) provides in relevant part that,

> [i]f the department [of Natural Resources] learns of a possible violation of the statutes relating to navigable waters or a possible infringement of the public rights relating to navigable waters, and the department determines that the public interest may not be adequately served by imposition of a penalty or forfeiture, the department may proceed as provided in this paragraph, either in lieu of or in addition to any other relief provided by law. The department may order a hearing under ch. 227 concerning the possible violation or infringement, and may request the hearing examiner to issue an order directing the responsible parties to perform or refrain from performing acts in order to fully protect the interests of the public in the navigable waters.

Enforcement actions under § 30.03(4)(a) are heard by a "hearing examiner" from the Department of Administration's Division of Hearings and Appeals.[2] *See* WIS. STAT. § 227.43(1)(b). The Department has directed by rule that "[t]he administrative law judge shall prepare findings of fact, conclusions of law and decision subsequent to each contested case heard," and "[u]nless the department petitions for judicial re-

---

[2] The statutes generally refer to the person who conducts administrative hearings on alleged pier violations as the "hearing examiner," while some regulations employ the term "administrative law judge." In the remainder of this opinion we will refer to the administrative decision maker as the administrative law judge (ALJ) because that is the title which appears beneath his signature on the decision and orders under review.

view . . ., the decision shall be the final decision of the department." Wɪs. Aᴅᴍɪɴ. Cᴏᴅᴇ § NR 2.155(1) (Sept. 2004).

¶ 5. At the conclusion of the proceedings before him, the administrative law judge (ALJ) entered findings of fact, conclusions of law and several orders. Two of the orders directed that the piers "shall be reduced in size [or length] so as to meet the conditions of Wɪs. Sᴛᴀᴛ. § 30.13(1) within ninety days of the date of this order unless a permit pursuant to Wɪs. Sᴛᴀᴛ. § 30.12(2) is issued for the structure." The Baers petitioned for judicial review of the administrative decision and orders.[3] The circuit court concluded that the Department lacked authority to bring this enforcement action because a department employee first discovered the alleged pier violations on her own initiative, and therefore, none of the circumstances described in Wɪs. Aᴅᴍɪɴ. Cᴏᴅᴇ § NR 326.02(2) were present (i.e., a third-party complaint or a request from the pier owner for information or a permit).

¶ 6. Because the circuit court concluded the Department lacked authority to bring the enforcement action, it entered a judgment vacating the two pier orders and dismissing the Department's enforcement action regarding the Baers' piers. The Department appeals.[4]

---

[3] The Department's enforcement action and the ALJ's decision and orders also dealt with a seawall on the Baer waterfront. The Baers did not seek review of the administrative decision and order regarding the seawall.

[4] In addition to the parties' arguments, we have the benefit in this appeal of two non-party briefs. The Wisconsin Association of Lakes aligns with the Department in arguing for reversal of the appealed judgment. The Wisconsin Realtors Association

## ANALYSIS '

¶ 7. We review the ALJ's decision, not that of the circuit court. *See Barnes v. DNR*, 178 Wis. 2d 290, 302, 506 N.W.2d 155 (Ct. App. 1993). Because the Department did not seek judicial review of the ALJ's decision and orders, they constitute the final decision and orders of the Department. *See* Wis. Admin. Code § NR 2.155(1); *Sea View Estates Beach Club, Inc. v. DNR*, 223 Wis. 2d 138, 146–47, 588 N.W.2d 667 (Ct. App. 1998). Consequently, "because the DNR has expressly adopted the ALJ decision, the ALJ decision should be afforded the same deference afforded the agency." *Hilton v. DNR*, 2006 WI 84, ¶ 14, 293 Wis. 2d 1, 717 N.W.2d 166.

¶ 8. When the Department has adopted an ALJ's decision and order relating to the regulation of piers under Wis. Stat. §§ 30.12 and 30.13, we will generally accord its legal conclusions "great weight deference" and review its factual findings under the "substantial evidence" test. *Id.*, ¶ 17. This means that we will sustain the ALJ's legal conclusions if they are "reasonable," even if we find a competing interpretation to be more reasonable. *Id.* As for factual findings, we will sustain them if we conclude, "after considering all the evidence of record, reasonable minds could arrive at the same conclusion." *Id.*, ¶¶ 16–17.

¶ 9. We cannot, however, accord the ALJ's conclusion on the principal legal issue before us great weight deference because the ALJ did not address it in the decision under review. We are satisfied that the Baers

joins the Baers in asking us to affirm the circuit court's dismissal of the Department's enforcement action.

preserved the issue. In their brief to the ALJ, they argued that, because the action was not initiated following a third-party complaint regarding their piers, the Department could not enforce the provisions of WIS. ADMIN. CODE ch. NR 326 against their piers. It seems clear that, by issuing the orders he did, the ALJ implicitly concluded the Department was entitled to proceed against the Baers' piers on its own initiative. We nonetheless decide the question of the Department's enforcement authority de novo because the decision before us provides no analysis of the issue to which we might defer.

¶ 10. The administrative rule at the center of the present dispute reads as follows:

(1) This chapter shall apply to all piers and boat shelters constructed or maintained by riparians on the beds of navigable waterways for the purpose of providing improved navigation access to those waterways.

(2) *The department shall apply this chapter only in response to:*

(a) *Complaint by a riparian, municipality, or any other person* that a pier or boat shelter exists in navigable waters in violation of s. 30.12 or 30.13, Stats.;

(b) *Complaint by a riparian* that an adjacent riparian's pier or boat shelter interferes with access to navigable water;

(c) *Complaint by a riparian or any other person* that a pier or boat shelter interferes with rights of navigation;

(d) *Request by a riparian for information* regarding standards to be applied to pier or boat shelter construction;

(e) *Application by a riparian for authority to construct* a solid pier, any other

pier requiring a permit or a permanent boat shelter under s. 30.12, Stats.

WIS. ADMIN. CODE § NR 326.02 (emphasis added).

¶ 11. The Baers' contention on which they prevailed in the circuit court is straightforward: WIS. ADMIN. CODE ch. NR 326 constitutes the Department's implementation of its authority and responsibility to enforce pier standards under WIS. STAT. §§ 30.12 and 30.13. By the express terms of the rule, the Department may apply ch. NR 326 under only certain, enumerated circumstances, none of which were present in this case. Therefore, the Department lacked authority to bring an enforcement action regarding the Baers' piers and the circuit court correctly vacated the ALJ's orders and dismissed the action.

██

¶ 12. The Department's position is equally straightforward: although the language of WIS. ADMIN. CODE § NR 326.02(2) may preclude the Department from applying the specific provisions of WIS. ADMIN. CODES ch. NR 326 to the Baers' piers in this action, nothing in the rule precludes it from bringing this action to halt a "possible violation of the statutes relating to navigable waters or a possible infringement of the public rights relating to navigable waters." WIS. STAT. § 30.03(4)(a). The Department maintains that it has not only the statutory authority, but a statutory duty, to proceed against the Baers' piers if it believes them to be in violation of WIS. STAT. ch. 30 or contrary to the public's rights in Lake Alder. According to the Department, nothing in § NR 326.02(2) limits its statutory enforcement authority, nor could it do so. We agree with the Department.

243

¶ 13. We first note that the Department's interpretation of WIS. ADMIN. CODE § NR 326.02(2) is entitled to "controlling weight," a standard we have recently explained this way:

> The interpretation of an administrative rule or regulation, like the interpretation of a statute, is a question of law we review independently. An agency's interpretation of its own rules is controlling unless it is plainly erroneous or inconsistent with the language of the rule . . . .
>
> The deference applied to an administrative agency's interpretation of its own rules is different than the deference we give to its interpretation of a statute. Statutory interpretations are generally entitled to one of three levels of deference—great weight, due weight, or no deference. However, agency interpretations of their own rules generally receive only one level of deference, called either controlling weight or great weight. Despite the difference in terminology, the deference we give to an agency interpretation of its own rules is similar to the great weight standard applied to statutory interpretations. Both turn on whether the agency's interpretation is reasonable and consistent with the meaning or purpose of the regulation or statute.

*Marder v. University of Wisconsin*, 2004 WI App 177, ¶ 27 & n.3, 276 Wis. 2d 186, 687 N.W.2d 832, *aff'd*, 2005 WI 159, 286 Wis. 2d 252, 706 N.W.2d 110 (citations omitted). Thus, we must consider whether the Department's interpretation of § NR 326.02(2) "is reasonable and consistent with the meaning or purpose of the regulation." *Id.* We conclude that the Department's interpretation meets this standard.

¶ 14. Nothing in Wis. Admin. Code § NR 326.02 speaks specifically to the Department's *authority* to enforce the provisions of Wis. Stat. ch. 30 that relate to piers erected over the navigable waters of this state. By its terms, Wis. Admin. Code § NR 326.02(2) addresses only the circumstances under which the Department may apply the standards and guidelines set forth in the rule, not the circumstances under which the Department may proceed with an action under Wis. Stat. § 30.03(4) to preserve and protect the public's rights in navigable waters. As to the circumstances under which the Department may bring a statutorily authorized administrative enforcement action, the statutory language is plain and broad in its reach: *"If the department learns of a possible violation* of the statutes relating to navigable waters *or a possible infringement* of the public rights relating to navigable waters, . . . *the department may proceed* as provided in this paragraph."* Section 30.03(4)(a) (emphasis added). Nothing in the language of § NR 326.02(2) purports to limit or restrict this broad grant of authority to the Department to bring enforcement actions whenever it learns, by any means, of a "possible violation . . . or a possible infringement."

¶ 15. More importantly, we conclude that, even if the Department had sought by rule to narrow its statutory authority and duties under Wis. Stat. ch. 30 to enforce the provisions of that chapter and protect the public's rights in navigable waters, it could not do so. More than sixty years ago, when the law regarding agency rule-making was in its infancy, the Wisconsin Supreme Court concluded that an agency could not by rule shirk statutory duties by divesting itself of authority legitimately delegated to it by the legislature:

> While by [cited statute] the commission is given power "to adopt rules to govern its proceedings and to regulate the mode and manner of all investigations and hearings," this provision does not confer upon the commission power to enlarge or limit its own power. There is a wide constitutional gap between an order regulating procedure before the commission and an order which operates to limit the exercise of the statutory powers of the commission. The first is made in the exercise of a power delegated to it by the legislature. The power to limit or prescribe the field of action of an administrative agency is the kind of legislative power that cannot be delegated.

*Clintonville Transfer Line, Inc. v. PSC*, 248 Wis. 59, 70–71, 21 N.W.2d 5 (1945). The Baers' proffered interpretation of Wis. Admin. Code § NR 326.02(2) violates the principle enunciated in *Clintonville Transfer* because the rule would then constitute an attempt by the Department to "limit or prescribe [its] field of action," something only the legislature is empowered to do.

¶ 16. The Baers, however, offer two reasons why we should conclude that the legislature has in fact authorized the Department to limit its "field of action," *Clintonville Transfer*, 248 Wis. at 71, in the manner they claim the Department has done in Wis. Admin. Code § NR 326.02(2). First, the Baers suggest that the use of "may" in Wis. Stat. § 30.03(4)(a) ("If the department learns of a possible violation . . ., the department *may* proceed as provided in this paragraph . . . ." (emphasis added)) shows that the legislature specifically empowered the Department to limit its exercise of enforcement authority by rule. We reject this interpretation as unreasonable. Under the *Clintonville Transfer* analysis quoted above, it is not clear that the legislature could

properly delegate to the Department the power to circumscribe its own enforcement authority in that manner. A more reasonable reading of "may proceed" in § 30.03(4)(a) is that the legislature intended to imbue the Department with a degree of prosecutorial discretion by permitting it, in individual cases, to achieve compliance with WIS. STAT. ch. 30 by means other than administrative enforcement actions. Such case-by-case discretion also allows the Department to prioritize potential enforcement actions according to the seriousness of the violations and the resources available to prosecute them.

¶ 17. The Baers' second reason that we should conclude the legislature has authorized the Department to limit its own enforcement authority in WIS. ADMIN. CODE § NR 326.02(2) is that the legislature could have, but did not, act to prevent the rule from taking effect. The Baers seem to suggest that, if the legislature does not prevent a rule from taking effect, the rule essentially becomes an act of the legislature. At a minimum, they contend the legislature's failure to act must be viewed as an endorsement of the rule as being consistent with legislative intent. In support of these contentions, the Baers point to our footnote in *Wisconsin Citizens Concerned for Cranes and Doves v. DNR*, 2003 WI App 76, 263 Wis. 2d 370, 661 N.W.2d 858, where we said this:

> [T]he legislature could have prevented the promulgation of WIS. ADMIN. CODE § NR 10.01(1)(h). *See* WIS. STAT. § 227.19(5)(f). Although committees in both houses of the legislature conducted hearings on the rule, neither took action to prevent its promulgation. *See* § 227.19(4). Moreover, although several bills have been introduced since the promulgation of § NR

10.01(1)(h) to prohibit the department from authorizing an open season for the hunting of mourning doves, none have passed. *See* 2001 S.B. 45; 2001 A.B. 190; 2001 A.B. 859. Thus, were it necessary for us to go beyond the plain language of Wis. Stat. ch. 29 to ascertain the legislature's intent regarding the department's authority to establish an open season for hunting mourning doves, legislative history would provide support for the conclusion we reach. *See Mallo v. DOR*, 2002 WI 70, ¶¶ 30–31, 253 Wis. 2d 391, 645 N.W.2d 853 (Where a proposed rule gains significant media coverage, suggesting that the legislature could not ignore its existence, the failure of legislative committees to object to the rule is evidence that the legislature intended to grant the agency authority to promulgate the rule.).

*Id.*, ¶ 15 n.5.

¶ 18. We reject the Baers' argument based on the quoted footnote. First, our discussion in *Cranes and Doves* was premised in large measure on the notoriety of the mourning dove hunting issue. There was simply no question that the legislature was acutely aware of the Department's rule establishing an open season for hunting the birds. Not only had legislative committees conducted hearings on the rule, but, as we noted, bills had been introduced to prohibit the hunting of mourning doves. The Baers do not point to any similar evidence that the legislature was broadly aware of the Department's promulgation of Wis. Admin. Code § NR 326.02, and that it therefore "knowingly" acquiesced in the rule by failing to act to prevent it from taking effect.

¶ 19. More important, however, is the fact that the Baers' legislative acquiescence argument is based on the premise that Wis. Admin. Code § NR 326.02(2) plainly limits the Department's enforcement authority under Wis. Stat. § 30.03(4) to certain, enumerated

circumstances. As we have discussed, however, the language of the rule does not plainly so provide, and the rule cannot reasonably be read as a limitation on the Department's statutory enforcement authority. Thus, it is at least equally plausible, if not more so, that if the legislature had been broadly aware of the provisions of § NR 326.02(2), it shared the Department's interpretation that the rule does not purport to limit the Department's enforcement authority under § 30.03(4).

¶ 20. In sum, we conclude the Department's interpretation of Wis. Admin. Code § NR 326.02(2) "is reasonable and consistent with the meaning or purpose of the regulation." *See Marder,* 276 Wis. 2d 186, ¶ 27 & n.3. There is no dispute that a Department employee observed the Baers' piers, and the Department thus "learn[ed] of a possible violation" of Wis. Stat. §§ 30.12 and 30.13. The only condition imposed by Wis. Stat. § 30.03(4)(a) for bringing an administrative enforcement action under that section is therefore satisfied. We agree with the Department that nothing in § NR 326.02(2) precludes it from commencing this administrative enforcement action against the Baers' piers.

¶ 21. Having concluded the Department acted within its authority in bringing the present enforcement action against the Baers' piers, we next address whether the ALJ's decision and order are sustainable under the legal standards applicable to the facts found by the ALJ. As we discussed at the beginning of our analysis, because the ALJ's decision and order constitute the final decision and order of the Department, we must accord the ALJ's factual findings and legal conclusions considerable deference. *See Hilton,* 717 N.W.2d 166, ¶ 14. Notwithstanding our deference, we conclude we must set aside the ALJ's pier orders because the ALJ

wrongly relied in part on the provisions of WIS. ADMIN. CODE ch. NR 326 in ordering the removal of the piers.

¶ 22. The ALJ arrived at the following conclusion of law regarding the Baers' two piers.

> Pursuant to WIS. STAT. §§ 30.12 and 30.13 *and WIS. ADMIN. CODE § NR 326.05,* a permit is required for the piers. The piers were constructed and have been maintained without a permit. Accordingly, the construction and maintenance of the piers constitutes a violation of WIS. STAT. §§ 30.12 and 30.15.

(Emphasis added.) The ALJ based his legal conclusion on the following factual findings:

> The Baers replaced an existing pier located at the southern end of their shoreline. The replacement pier extends 52 feet and four inches into the lake from the shoreline. At the landward end of the pier is a platform sixteen feet and four inches square. At the lakeward end of the pier is a smaller platform. The lakeward platform is twelve feet and four inches wide and approximately nine feet and four inches long .... The section of the pier connecting the two platforms is six feet and four inches wide. No permit was applied for or issued for the replacement pier. Thomas Baer testified that the new pier is smaller than the pier it replaced.
>
> The Baers have placed a table and chairs on the landward platform and a slide on the other platform. These items indicate that the platforms were not constructed as an aid to navigation. At the hearing, Mr. Baer testified that he worked on boat engines on the larger platform. Although this undoubtedly is convenient for him, there is no need that such work be done on a surface constructed over public waters. The Baers could place such a work surface on the shore adjacent to the pier. The two platforms incorporated into this pier constitute an excessive consumption of public waters for a private use. Accordingly, the maintenance of this

pier interferes with public rights in Alder Lake. This pier cannot be maintained in its current configuration without a permit.

The Baers constructed a permanent pier on the bed of Alder Lake near their north property line in the spring of 2000. The north pier is approximately five feet wide and extends to a water depth of four feet during the summer season when the water level in Alder Lake is elevated . . . . Mr. Baer alleges that an antique boat they won and launch from this pier requires that the pier extend beyond the line of navigation (three foot water depth); however, no evidence supporting this allegation was offered at the hearing.

. . . .

With respect to the north pier, *pursuant to Wis. Admin. Code § NR 326.05,* a pier extending beyond the line of navigation (three foot water depth) can not be placed without a permit or a demonstrated need for a greater water depth. No such demonstration was made by the Baers. Accordingly, unless the Baers obtain a permit, the length of the north pier must be reduced to the line of navigation.

(Emphasis added.)

¶ 23. Thus, it is clear that, in reaching his decision, the ALJ considered and applied one or more of the pier standards set forth in Wis. Admin. Code ch. NR 326, which, under the plain language of Wis. Admin. Code § NR 326.02(2), cannot be applied to the Baers' piers because none of the circumstances enumerated in § NR 326.02(2)(a)-(e) led to the commencement of this action. Specifically, the ALJ expressly applied the "line of navigation" standard set forth or referenced in §§ NR

326.03(4), 326.04(1) and 326.05 to the north pier. Accordingly, we set aside the order for reduction in size of the north pier.[5]

¶ 24. Although the ALJ's findings regarding the south pier do not refer to any provisions of WIS. ADMIN. CODE ch. NR 326, the findings also do not describe the standards or factors that the ALJ considered in determining that the platforms on the south pier constitute "an excessive consumption of public waters for a private use." We do not necessarily conclude that the ALJ's lack of specificity regarding why the south pier "interferes with public rights in Alder Lake" would constitute an

---

[5] We note that 2003 Wis. Act 118 was enacted in January 2004 and published on February 5, 2004. The act, among other things, created WIS. STAT. § 30.12(1g)(f) (2003–04), which reads as follows:

> A riparian owner is exempt from the permit requirements under this section for the placement of a structure . . . if the structure . . . is located in an area other than an area of special natural resource interest, does not interfere with the riparian rights of other riparian owners, and is any of the following:
>
> . . . .
>
> A pier or wharf that is no more than 6 feet wide, that extends no further than to a point where the water is 3 feet at its maximum depth, or to the point where there is adequate depth for mooring a boat or using a boat hoist or boat lift, whichever is closer to the shoreline, and which has no more that 2 boat slips for the first 50 feet of riparian owner's shoreline footage and no more than one additional boat slip for each additional 50 feet of the riparian owner's shoreline.

The Department maintains that this provision applies to the Baers' piers, notwithstanding the fact that the present enforcement action was commenced in 2001 and heard by the ALJ in the summer of 2003. On remand, the ALJ should consider what impact, if any, WIS. STAT. § 30.12(1g)(f) (2003–04) may have on the present dispute.

independent ground for reversal. However, because we must reverse the order regarding the north pier due to the ALJ's improper reliance on § NR 326.05, we also reverse the order regarding the south pier and direct the ALJ on remand to articulate the standards being applied to that pier in determining whether it excessively consumes public waters.

## CONCLUSION

¶ 25. For the reasons discussed above, we reverse the judgment of the circuit court that dismissed the Department's enforcement action against the Baers' piers. On remand to the circuit court, the case shall be further remanded to the Division of Hearings and Appeals, which shall conduct further proceedings consistent with this opinion. *See* WIS. STAT. § 227.57(5) (providing that, on judicial review, if a court determines that an agency "has erroneously interpreted a provision of law," the court may "remand the case to the agency for further action under a correct interpretation of the provision of law").

*By the Court.*—Judgment reversed and cause remanded with directions.