Frank HAMMACK, individually and as Special Administrator of the Estate of Sandra Hammack, deceased; as Special Administrator of the Estate of Stephanie Hammack, a minor, deceased; and as Special Administrator of the Estate of Heather Hammack, a minor, deceased, Plaintiff,

v.

DeLONGHI, S.p.A., a foreign-Italian corporation, ABC Insurance Company, DeLonghi America, Inc., a foreign-Delaware corporation, and Def Insurance Company, Defendants.

Civil A. No. 94–C–1144.

United States District Court, E.D. Wisconsin.

Jan. 30, 1996.

Philip A. Munroe, DiRenzo & Bomier, Neenah, WI, for plaintiff.

Eric J. VanVugt, Quarles & Brady, Milwaukee, WI, Jon Perfetti, Pino & Associates, White Plains, NY, for defendant.

## DECISION AND ORDER

REYNOLDS, District Judge.

## INTRODUCTION

What did Frank Hammack know about the manufacturer of his electric heater, when did he know it, and when should he have known it? Those three questions resolve the defendants' motion for summary judgment in Hammack's favor.

## FACTS

In August 1988, Frank Hammack bought an oil-filled electric heater for his home in Necedah, Wisconsin. On October 19, 1989, a fire destroyed Hammack's home and killed his wife and two of his daughters.

Hammack received conflicting information about the cause of the fire. Within a week of the tragedy, a deputy sheriff told Hammack that a defective heater caused the fire; however, the state fire marshal continued to investigate the fire to determine if arson was the cause. Because the fire had occurred shortly before Hammack was supposed to testify in a murder trial, arson was a possibility. Hammack knew about the state fire marshal's investigation. In November 1989, Hammack also saw the Necedah Voluntary Fire Department report, which also blamed the heater. In January 1990, the state fire marshal concluded that arson did not cause the fire. Eventually, the coroner told Hammack about the state fire marshal's conclusions. For the next eight months, Hammack did not think of filing suit, in part because he was mourning the loss of his family.

On August 24, 1990, Hammack received notice that his army reserve unit would go on active duty. His active service began on September 20, 1990, and continued to August 4, 1991. Within a few months of returning from the army, Hammack decided to file a law suit against the manufacturer of the heater.

Hammack began searching for the same model heater as the one that caused the fire. At a True Value hardware store, Hammack saw an oil-filled heater made by Lakewood that he thought was the same as the one that had caused the fire. On February 27, 1992, Hammack met with an Illinois attorney, Jack Cooke, who had handled some legal work for Hammack's deceased wife, Sandy. Cooke agreed to represent Hammack in an action against the manufacturer of the heater. Hammack told Cook that the Juneau County Sheriff had the heater and the state fire marshal had pictures. Cooke told Hammack to look for the heater.

Hammack went to the Juneau County Sheriff's Office where he thought the heater was. A Juneau County deputy sheriff told Hammack that no one there had picked up the remnants of the heater. Then, Hammack went to the junkyard where the remains of the fire were disposed of; Mr. Lee, the person who cleaned up the fire and owned the junkyard, said he did not have the heater. Hammack searched the junkyard himself but could not find the heater.

On March 25, 1992, Cooke and Hammack had a phone conference in which Hammack told Cooke that Lakewood, to the best of Hammack's recollection, made the heater that caused the fire. Hammack also remembered that he bought the heater at either Kmart or Wal–Mart in Wisconsin Rapids on August 8, 1988. Hammack got copies of his cancelled checks that he signed on August 8, 1988; one check was for a purchase at Kmart, and another was for a purchase at Wal–Mart; both checks were for more than 75 dollars. Cooke told Hammack to visit Kmart and Wal–Mart, but Hammack never visited them because the stores had stopped carrying heaters until the fall.

Meanwhile, in April 1992, Cooke requested records from Necedah's fire chief and the state fire marshal about the fire. None of these documents identified the manufacturer of the heater. Cooke eventually forwarded the documents to his co-counsel, another Illinois attorney. Because nothing refuted Hammack's memory, Cooke decided Lakewood was the appropriate defendant. On October 16, 1992, Hammack filed suit in Wisconsin against Lakewood.

After a series of coincidences, Hammack changed his mind about the manufacturer. Shortly after the fire, James Rich, a neighbor, had gathered papers and photos that had survived the fire. Although the Riches stored the documents for over four years, no one told Hammack about them. After James Rich died, his son, Tim Rich, found the box and returned the contents to Hammack in November 1993. Hammack waited until the following spring to examine the documents. Among the documents were family pictures in which the heater was in the background. From those pictures, Hammack concluded that DeLonghi, and not Lakewood, made the heater. Later, in his attorney's office, Hammack picked the DeLonghi from a line-up of heaters as the heater most like the one he had bought in 1988.

Hammack dismissed the action against Lakewood, and, on September 7, 1994, filed this action against DeLonghi. Hammack is a resident of Wisconsin and the Special Administrator for the Estates of Sandra Hammack, Stephanie Hammack, and Heather Hammack. Defendant DeLonghi, S.p.A. is an Italian corporation with Italy as its principal place of business. Defendant DeLonghi America, Inc., is a Delaware corporation with its principal place of business in New Jersey.

## ANALYSIS

■ The court has jurisdiction under 28 U.S.C. §§ 1332, 1441, and 1446. Hammack has four personal injury claims that are subject to a three-year statute of limitation. Wis.Stat. § 893.54. Hammack also has two claims for property damage that are subject to a six-year statute of limitation. The defendants have moved for summary judgment on the four personal injury claims because the statute of limitations bars them. At summary judgment, a defendant must establish a *prima facie* statute of limitations defense. *Claypool,* 195 Wis.2d 535, 545–46, 536 N.W.2d 206, 209–210 (Ct.App.1995) *review granted* 542 N.W.2d 154 (1995). If the plaintiff cannot create a material factual dispute, the court must grant summary judgment. *Id.,* 195 Wis.2d at 546, 536 N.W.2d 206. Because one could conclude that Hammack's claim accrued less than three years before he filed suit against the defendants, the court must deny summary judgment.

■ The statute of limitations begins to run when a claim accrues. A claim accrues when there is an injury capable of redress, a suable party, and a party who may bring the claim. Generally, the date of the injury and the accrual date are the same; however, in cases where the plaintiff is unaware of the defendant's identity, the discovery rule applies. *Spitler v. Dean,* 148 Wis.2d 630, 436 N.W.2d 308 (1989). Then, a claim accrues either when the plaintiff actually discovers who the defendant is or when the plaintiff should have discovered the defendant's identity by using reasonable diligence. *Id.* The same rule applies if the plaintiff is unaware of the injury or the cause of the injury when the injury occurs. *Hansen v. A.H. Robins, Inc.,* 113 Wis.2d 550, 335 N.W.2d 578 (1983); *Borello v. United States Oil Company,* 130 Wis.2d 397, 388 N.W.2d 140 (1986). In addition, time spent in active military service tolls the statute of limitations.

Wisconsin courts have interpreted the discovery rule in two different ways. Under one view, the court should decide when the plaintiff knew the identity of the defendant and when a person using reasonable diligence should have known the defendant's identity; whichever date is earlier marks when the cause of action accrues. *See Hennekens v. Hoerl*, 160 Wis.2d 144, 465 N.W.2d 812 (1991). In *Hennekens*, although the plaintiff did not use reasonable diligence, the claim accrued not on the day the injury occurred but on the day he received a letter informing him of the injury. *Id.* at 167–168 n. 21, 465 N.W.2d at 822 (1991); *see also Carlson v. Pepin County*, 167 Wis.2d 345, 354, 481 N.W.2d 498, 502 (Ct.App.1992) (remanding case to determine when a plaintiff who suffered brain damage and took five years to discover the defendants' identity should have known who the defendants were).

Recently, however, the Wisconsin Court of Appeals has required plaintiffs to use reasonable diligence before they can rely on the discovery rule. *Awve v. Physicians Ins. Co.*, 181 Wis.2d 815, 823–24, 512 N.W.2d 216, 219 (Ct.App.1994). Under this view, the cause of action accrues on the date of the injury unless the plaintiff was both initially unaware of the defendant and used reasonable diligence to discover the defendant. Then, a claim accrues when the plaintiff actually discovered the identity of the defendant. *Claypool v. Levin*, 195 Wis.2d at 553, 536 N.W.2d at 212 (Ct.App.1995). Although these courts were interpreting a statutory version of the discovery rule, the statute's wording is the same as the judicially created discovery rule.

■■■ Under either interpretation, however, the defendant must, at least, show that the plaintiff failed to use reasonable diligence in searching for the defendant. Reasonable diligence includes those actions a reasonable person, under the same circumstances as the plaintiff, would have taken to discover the defendant's identity. *Carlson*, 167 Wis.2d at 353, 481 N.W.2d at 501. Although plaintiffs must act on the information they have, *Spitler*, 148 Wis.2d at 638, 436 N.W.2d at 311, reasonable diligence does not require a superhuman effort or the judgment of an expert. *See Borello*, 130 Wis.2d at 414, 388 N.W.2d at 147. A person exercising reasonable diligence may make mistakes that prolong the search. *E.g. Claypool*, 195 Wis.2d at 550–552, 536 N.W.2d at 211–12 (plaintiff can, in some cases, rely on incorrect judgment of doctor that prolonged discovering the cause of the injury).

■■■ Reasonable diligence is missing only when another method of investigation probably would have discovered the defendants' identity sooner. For example, reasonable diligence required a plaintiff to examine hospital records which had the name of the treating doctor. *Groom v. Professionals Ins. Co.*, 179 Wis.2d 241, 250–51, 507 N.W.2d 121, 124 (Ct.App.1993). If no alternative is better than the course the plaintiff took, there is no reason to penalize plaintiff. Statutes of limitations are not hoops to be jumped through; they are rules that promote fair and quick litigation. Only if an alternative method existed, must the court decide if due diligence required the plaintiff to have used the alternative method or if only an expert would have known about the alternatives.

■■■ Here, a factual dispute exists over whether Hammack acted reasonably and whether any alternative method would have revealed the defendants' identity any quicker. This is a case about mistake. Initially, Hammack filed a suit within the statute of limitations—even if his cause accrued on the date of the fire, but he filed it against the wrong (or what he now believes to be the wrong) defendant. If Hammack exercised due diligence but made a reasonable error in identifying Lakewood, he also exercised due diligence in later identifying DeLonghi. Once a plaintiff identifies a defendant, the plaintiff has no additional burden to continue searching for proof that the decision was correct.

One could conclude that Hammack acted reasonably based on the circumstances. Until Hammack knew that the heater caused the fire, he had no reason to look for the identity of the heater's manufacturer. Hammack should have known that the heater caused the fire sometime in late January 1990 when the fire marshal concluded his

report. Although a deputy sheriff told Hammack about the heater causing the fire a week after it occurred, the conversation was insufficient because Hammack knew that the fire marshal was investigating the cause of the fire. Similarly, although the Necedah Fire Department's report was further proof of the fire's cause, the fire marshal's investigation continued. As long as the expert fire investigator was in doubt about the cause of the fire, a reasonable person could wait for the conclusion of that investigation. The fire marshal finished his investigation on January 20, 1990.

Whatever the date Hammack should have learned about the cause of the fire, the defendants argue that he should have immediately begun to look for the identity of the manufacturer, but that requirement is too burdensome. When a person loses his family and his home, a law suit need not be the first concern. Rather, Hammack could take time to mourn, find a new home, put his life together, and still act with reasonable diligence. Courts analyze reasonable diligence in light of the plaintiff's actual circumstance. *See Carlson,* 167 Wis.2d at 354, 481 N.W.2d 498 at 501–502. The law requires reasonable diligence, not vulture-like expediency.

Not until some time after January can one expect Hammack to have begun his search for the heater's manufacturer. Hammack waited until he returned from the army to begin his search. Excluding his time in the army, as required by law, nine months passed between the time he should have known the heater caused the fire and the time he began searching for the manufacturer. Taking nine months (or even ten or eleven months) to decide to sue someone is reasonable, especially when one must mourn family members and find a new home. Once he decided to sue, he went to True Value hardware store and saw an electric heater, which he thought was the right one. No one argues this was an unreasonable mistake. He hired an attorney, and they both made good faith attempts to locate the heater. Attorney Cooke contacted the state fire marshal and the district attorney; Hammack contacted the sheriff's department and the junkyard, and he searched the junkyard himself. In just over a year after his return from the army, Hammack filed suit. Only a chance occurrence revealed the mistake: A friend returned pictures, of which Hammack was unaware, and the heater was in some of the pictures. Once Hammack decided that he was going to sue, he quickly searched for the heater's manufacturer. *Cf., Awve,* 181 Wis.2d at 824, 512 N.W.2d at 219 (despite having suspicions about the defendant's negligence, plaintiff waited a year to seek an expert's opinion). The facts allow the conclusion that Hammack acted with reasonable diligence.

Moreover, given that Hammack could not have known the heater was the cause of the fire until January 1990, none of the defendants' alternatives would have been likely to make a difference. The defendants argue any one of four methods would have led to a quicker discovery of the defendants. Hammack should have (1) tried to recover the heater shortly after the fire, (2) returned to Kmart and Wal–Mart and looked for the same model, (3) used his canceled checks to trace the heater, or (4) sued Kmart and Wal–Mart.

The defendants believe Hammack should have taken steps to secure the heater after the fire, but they do not specify what steps. Moreover, arguably, the heater was lost soon after the fire. The deputy sheriff said the sheriff's office never took the heater, and the person who cleaned up the fire said he did not have it. If the heater was lost, it was probably lost by January, months after Mr. Lee cleaned up the fire. The defendants do not state that someone else, like the fire marshal, had the heater. It is a factual question whether Hammack's trying to secure the heater in January would have led to a quicker discovery of the manufacturer.

Next, the defendants argued Hammack should have gone back to Kmart and Wal–Mart. From the summary judgment record, however, the date Hammack remembered the place he purchased the heater is unknown. By March 1992, he told attorney Cook that he bought the heater at either

Kmart or Wal–Mart.[1] Even if Hammack remembered earlier, going back to the stores may have been no more diligent than going to True Value. The defendants have not argued that Kmart and Wal–Mart carried a single brand of electric heaters, nor have they argued that DeLonghi's heaters were so unique that Hammack would have picked the right one. Because both Hammack and his daughter mistook a Lakewood heater with the one they bought (and the defendants claim that Hammack has now mistaken a DeLohnghi heater for the one he bought), going back to Kmart and Wal–Mart would not be any more diligent than going to a True Value hardware store which also carried oil-filled, electric heaters.

Third, the defendants argue that DeLonghi should have used the checks to trace his purchase. Until Hammack remembered the date and the place he bought the heater, going through his checks would have been useless. Once he remembered the date and place, however, the checks provided no more information. No one states that the name of the heater's manufacturer is on the check (in the memo space). Neither have the defendants stated that Kmart or Wal–Mart could trace a check back to a transaction; nor, and more importantly, have they stated that Kmart or Wal–Mart would go to the trouble of doing so. Even if there is a way to use the checks, it is not one obvious to the average person. One could conclude that the checks would not have quickened the discovery.

Finally, the defendants argue that Hammack should have sued Kmart and Wal–Mart. The court will not require prospective plaintiffs to sue everyone in sight. Rather, courts should encourage prospective plaintiffs to research their claims and whittle down the defendants to those who are most likely to be responsible. All of the defendants' alternatives lack the certainty of quicker discovery that hospital records provided in *Groom*.

1. Under the *Hennekens–Carlson* interpretation of the discovery rule, this option is only relevant if Hammack remembered where he bought the heater before he left for the army. Otherwise, reasonable diligence would have led to discovery some time after he returned from service on

## CONCLUSION

Based on the undisputed facts, one could conclude that none of the defendants' alternatives would have led to a quicker discovery of the defendants and that Hammack's investigation was reasonable under the circumstances. Either inference defeats the statute of limitation defense. Moreover, under the *Hennekens–Carlson* interpretation, reasonable diligence, even under the strictest interpretation, would not put the discovery date before September 7, 1991, and the suit would fall in the three-year limit. Therefore, the court denies the motion to dismiss.

**SO ORDERED.**

August 8, 1991. At that point, a reasonably diligent person could take a month to discover the identity of the manufacturer; in which case, his suit filed on September 4, 1994, would fall within the three-year statute of limitations.