Robert D. and Lorraine JACOBS, Hermes Floral Company, Inc., a Minnesota Corporation, Hermes Land Company, a Minnesota Partnership, Howard LaVenture, as the personal representative of the Estate of Anna LaVenture, and Vernon and Irene Waxon, individually and in representative capacities, Plaintiffs-Appellants,

Robert C. and Jerilyn JACOBS, Robert and Frances Dandeneau, David and Robin Ganji, John and Angela Stansbury, Carl M. and Paula M. Story and Gary Sukopp, individually and in representative capacities, Plaintiffs,

v.

NOR-LAKE, INC., a Wisconsin Corporation, Defendant-Respondent.

Court of Appeals

*No. 97–1740. Submitted on briefs February 2, 1998.—Decided March 3, 1998.*

(Also reported in 579 N.W.2d 254.)

626

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Erik T. Salveson, Thomas L. Johnson, John L. Krenn* and *Virginia J. Knudson* of *Gray, Plant, Mooty, Mooty & Bennett, P.A.*, Minneapolis, Minnesota.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Linda H. Bochert* and *Jon G. Furlow* of *Michael, Best & Friedrich, L.L.P.*, Madison, and *Mark J. Gherty* of *Gherty & Gherty, S.C.*, Hudson.

Before Cane, P.J., Myse and Hoover, JJ.

MYSE, J. The plaintiffs appeal a summary judgment dismissing their complaint against Nor-Lake, Inc., for contaminating their groundwater. The trial court granted summary judgment after concluding that the statute of limitations barred the plaintiffs' claims. The plaintiffs contend that the trial court erred by dismissing their claims because they were reasonably diligent in discovering Nor-Lake's responsibility for the contamination, and because they commenced this action within six years of that discovery. Because we conclude that the question of reasonable diligence must be submitted to a finder of fact, we reverse the judgment and remand the matter for further proceedings.

In 1984, after learning of groundwater contamination in the area of a nearby landfill, Nor-Lake investigated the groundwater at its plant. It discovered that its groundwater was also contaminated, and reported this finding to the Wisconsin Department of Natural Resources. Nor-Lake conducted further investigations into the source of the contamination, and concluded that the contamination resulted from the discharge of metal wash into its septic system. Nor-

Lake then introduced more environmentally-friendly procedures at its plant.

Later that same year, Nor-Lake informed local residents of the contamination and told them that it would pay to have their groundwater tested. Nor-Lake did not claim responsibility for any possible contamination, however; instead, it told the residents that it was checking their groundwater because it was "the Christian thing to do." Nor-Lake followed through with its promises, and conducted several private well tests.

The test results demonstrated that the plaintiffs' groundwater was also contaminated. After learning these results, Nor-Lake pursued at least two remedies. First, it installed carbon filters on the residents' wells. Second, it participated in a program with Andersen Corporation and 3M to supply the residents with bottled water. Nor-Lake also continued to test the plaintiffs' groundwater for improvement.

At no time, however, did Nor-Lake explicitly admit responsibility for causing the plaintiffs' groundwater contamination. Several letters written in the aftermath of the contamination serve to demonstrate this. In a 1988 letter written to Anna LaVenture, Nor-Lake stated that it was still trying to find "a source to the ground water problems in the area." In a 1993 letter to Robert and Lorraine Jacobs, a law firm wrote that Nor-Lake, 3M, and Andersen Corporation provided free bottled water because they "[cared] about their surrounding communities," and were doing so "[d]espite the fact that contamination from the landfill [another potential source of the contamination] is not attributable to any wastes or activities by these companies." A 1995 letter by Nor-Lake to Vernon Waxon stated that Nor-Lake "admits no liability for the contamination," even though it was supplying carbon

filters to the residents. Further, a 1996 letter to local residents from Ayres Associates, the group that residents knew was analyzing their well samples on behalf of Nor-Lake, stated that the source of ground water contamination "remains unknown."

The plaintiffs claim that they continually kept themselves informed of developments in the DNR investigation during this period. They read local newspaper articles and DNR newsletters, attended town meetings, and spoke with DNR officials when the officials would come to examine their wells. Despite this ongoing process, however, the plaintiffs claim that it never became sufficiently clear that Nor-Lake was responsible for the contamination until 1992. Several examples lend support to this claim. A newspaper article in 1986 stated that the DNR suspected both the landfill and Nor-Lake, and another article in 1988 stated that the DNR hoped to determine "who is the source of the contaminant, be it Nor-Lake or someone else." A 1988 DNR newsletter stated that it was "continuing to investigate and seek remedial actions for groundwater contamination problems," including initiating legal action against the owner of a local landfill. A DNR "Information Update" in September 1991 stated that the search for the source of the contamination "continues," and that the DNR would keep readers "posted as new information became available." Finally, the DNR never stated with certainty before 1992 that Nor-Lake caused the contamination; until that time they would only remark that Nor-Lake was a "suspect."

The September 1991 DNR "Information Update" informed readers that the DNR had hired an environmental firm, Braun Intertec, to "establish flow patterns for the contaminated groundwater." The

Braun report was eventually released in April 1992 and stated the following conclusion:

> The data gathered in this investigation suggests that there is a continuous plume which extends from the area of Nor-Lake to the Trout Brook Road area. . . . The information gathered to date indicates that the source of the contamination is the known release of contamination on the Nor-Lake, Inc. facility.

When this report was issued, the plaintiffs claim, they believed that they finally had sufficient information to bring a lawsuit against Nor-Lake. They did so approximately three years later, in April 1995. Nor-Lake raised as a defense the expiration of the six-year statute of limitations, and moved for summary judgment. The trial court granted Nor-Lake's motion and dismissed the case, after concluding both that the plaintiffs were not reasonably diligent and that they had sufficient information available from which they could have taken action over six years prior to the commencement of the lawsuit. The plaintiffs appeal.

In reviewing the granting of summary judgment, the appellate court adopts the same methodology as the trial court. *State v. Town of Linn*, 205 Wis. 2d 426, 434, 556 N.W.2d 394, 398 (Ct. App. 1996). This review is de novo. *Id.* at 434, 556 N.W.2d at 399. After examining the pleadings to determine that a claim and defense are asserted, we examine the proof submitted by the moving party to determine whether that party has made a prima facie case for summary judgment. *Preloznik v. City of Madison*, 113 Wis. 2d 112, 115, 334 N.W.2d 580, 582 (Ct. App. 1983).

632

If the moving party has made a prima facie case for summary judgment, we examine the proof submitted by the opposing party and determine whether a genuine issue exists as to any material fact. *Id.* at 116, 334 N.W.2d at 583. This court determines only whether a factual issue exists, and resolves all doubts in that regard against the moving party. *Id.* Even if there are no disputed issues of fact, summary judgment is not appropriate if reasonable alternative inferences can be drawn from the facts. *Ritt v. Dental Care Assocs., S.C.*, 199 Wis. 2d 48, 64, 543 N.W.2d 852, 858 (Ct. App. 1995).

Nor-Lake contends that the statute of limitations bars the plaintiffs' claims for two reasons. First, it argues that the plaintiffs cannot avail themselves of the discovery rule because they used "no diligence whatsoever" in discovering the source of the groundwater contamination. Thus, it claims, the statute of limitations began to run on the date of the injury, or 1984. Second, Nor-Lake argues that even if the discovery rule applied, the plaintiffs had sufficient knowledge, as a matter of law, on which to base a claim over six years before they commenced their action in 1995. We reject both claims.

Both sides agree that the statute of limitations applicable to this lawsuit is six years after the cause of action accrued. Section 893.52, STATS. Under Wisconsin law, the cause of action accrued when the plaintiffs discovered, or in the exercise of reasonable diligence should have discovered, "not only the fact of injury but also that the injury was probably caused by the defendant's conduct." *Borello v. U.S. Oil Co.*, 130 Wis. 2d 397, 411, 388 N.W.2d 140, 146 (1986).

Nor-Lake argues at the outset that the discovery rule is unavailable to the plaintiffs because they did not, as a matter of law, use reasonable diligence. A plaintiff can rely on the discovery rule only if he or she has exercised reasonable diligence. *Spitler v. Dean*, 148 Wis. 2d 630, 638, 436 N.W.2d 308, 311 (1989). The trial court concluded as a matter of law that the plaintiffs did not use reasonable diligence. We cannot agree, and therefore reverse the summary judgment and remand this matter for a factual determination.

"The issue of reasonable diligence is ordinarily one of fact." *Id.* Nor-Lake argues that this issue can be resolved on summary judgment because the material facts are not in dispute. Summary judgment is improper, however, if more than one reasonable inference can be drawn from the facts. *See Hennekens v. Hoerl*, 160 Wis. 2d 144, 162, 465 N.W.2d 812, 819–20 (1991). Because we conclude that more than one inference from the facts is reasonable, we reverse the summary judgment.

Nor-Lake argues that the plaintiffs were not reasonably diligent because they personally did nothing until they commenced this lawsuit in 1995, despite having sufficient information prior to 1989 to reasonably believe that Nor-Lake contaminated their wells. The plaintiffs argue that they did not have sufficient information prior to 1992, and that they were reasonably diligent in trying to obtain it.

The facts demonstrate that a reasonable inference can be made in favor of the plaintiffs' use of reasonable diligence. "Reasonable diligence" means such diligence as the great majority of persons would use in the same or similar circumstances. *Spitler*, 148 Wis. 2d at 638, 436 N.W.2d at 311. The United States District Court,

Eastern District of Wisconsin, recently summarized Wisconsin law on this issue as follows:

> Reasonable diligence includes those actions a reasonable person, under the same circumstances as the plaintiff, would have taken to discover the defendant's identity. Although plaintiffs must act on the information they have, reasonable diligence does not require a superhuman effort or the judgment of an expert. A person exercising reasonable diligence may make mistakes that prolong the search.
>
> Reasonable diligence is missing only when another method of investigation probably would have discovered the defendants' identity sooner. For example, reasonable diligence required a plaintiff to examine hospital records which had the name of the treating doctor. If no alternative is better than the course the plaintiff took, there is no reason to penalize plaintiff. Statutes of limitations are not hoops to be jumped through; they are rules that promote fair and quick litigation. Only if an alternative method existed, must the court decide if due diligence required the plaintiff to have used the alternative method or if only an expert would have known about the alternatives.

*Hammach v. DeLonghi, S.p.A.*, 914 F.Supp. 303, 306 (E.D. Wis. 1996) (citations omitted).

█

The undisputed facts show that plaintiffs read newspaper articles and DNR newsletters, attended town meetings, and spoke with DNR officials concerning the ongoing investigation. Although Nor-Lake faults the approach taken by the plaintiffs, it is not clear from the summary judgment record what alternative steps the plaintiffs could reasonably have been expected to take. We do not believe that, as a matter of

law, the plaintiffs were required to duplicate the costly, ongoing DNR investigation into the cause of the groundwater contamination. An "ordinary person" cannot be expected "to take extraordinary steps" in investigating the cause of his or her injury. *Borello*, 130 Wis. 2d at 414, 388 N.W.2d at 147. We therefore conclude that two different inferences may be drawn from the facts, and remand for a resolution of this dispute.

Nor-Lake next argues that, even if the plaintiffs did use reasonable diligence, they discovered the cause of the contamination well before six years prior to the commencement of the lawsuit. The plaintiffs contend that, although they may have suspected or even believed that Nor-Lake was responsible, they did not have sufficient information until 1992 from which they could objectively conclude that Nor-Lake was in fact responsible. The trial court concluded as a matter of law that the plaintiffs did discover the cause of their injury, and supported its summary judgment on this alternative ground. We conclude that summary judgment on this issue was also erroneous.

██

The cause of an injury is "discovered" when a potential plaintiff has information that would give a reasonable person notice of the cause of injury. *Claypool v. Levin*, 209 Wis. 2d 284, 300, 562 N.W.2d 584, 590 (1997). A plaintiff cannot wait until he or she is certain about the cause, or wait for expert verification of known information. *Id.* at 300–01, 562 N.W.2d at 590–91. On the other hand, Wisconsin law does not require a plaintiff to bring a lawsuit before the plaintiff has sufficient information to reach an objective conclusion as to cause. *Borello*, 130 Wis. 2d at 411–12, 388 N.W.2d at 146. This is because Wisconsin courts "have consistently recognized the injustice of commencing

the statute of limitations before a claimant is aware of all the elements of an enforceable claim," including the discovery of the identity of the defendant and the cause of the injury. *Spitler*, 148 Wis. 2d at 636, 436 N.W.2d at 310.

We cannot conclude, as a matter of law, that the plaintiffs had sufficient information to give them notice of the cause of their injury. Reasonable, competing inferences may be drawn from the facts. While it is true that Nor-Lake was actively involved in the investigation and remedy of the contamination, Nor-Lake also officially denied responsibility for the plaintiffs' injuries. While Nor-Lake was considered a "suspect" by the DNR, the plaintiffs apparently had no objective information to support this suspicion. We also note that the plaintiffs were receiving information from the DNR, newspapers, and corporate attorneys during the investigation that suggested the landfill might be a cause.

■

We further note that the plaintiffs' lay opinions as to the source of the groundwater contamination is insufficient to establish that, as a matter of law, they discovered Nor-Lake probably caused the contamination. A "subjective lay person's belief" as to the cause of an injury, on its own, is insufficient to establish discovery when a cause and effect relationship is not readily apparent. *Borello*, 130 Wis. 2d at 411–12, 388 N.W.2d at 146. *Borello* is instructive on this issue. Borello believed that a new furnace she had purchased was causing medical problems. *Id*. at 401, 388 N.W.2d at 141. Several times she sought medical assistance, but each doctor told her that her complaints could not be attributed to the furnace. *Id*. Eventually, the plaintiff found a doctor who concluded that that the furnace was a factor, and she commenced the action two years later.

637

*Id.* at 402, 388 N.W.2d at 142. The supreme court held that the discovery rule applied. Although the court noted that the plaintiff "believed" that the furnace caused her injuries, it was not until the final doctor's diagnosis "that there could be any objective conclusion reached that the furnace was probably the cause of the disability." *Id.* at 411–12, 388 N.W.2d at 146. The court specifically rejected the view that the plaintiff's subjective belief was sufficient, noting that the cause and effect relationship was not readily apparent, unlike "the typical tort claim, *e.g.*, an automobile accident." *Id.* at 412, 388 N.W.2d at 146.

We believe that *Borello* controls the outcome of this issue. The summary judgment record indicates that establishing the cause of groundwater contamination is a very difficult process. For over eight years the DNR informed the plaintiffs that its investigation was continuing, and during this entire time it could only label Nor-Lake a "suspect." We therefore cannot conclude, as a matter of law, that any suspicions or beliefs held by the plaintiffs amounted to discovery.

In conclusion, we hold that the trial court erred by granting Nor-Lake's summary judgment motion. We remand, first, for a factual determination whether each individual plaintiff used reasonable diligence to discover the cause of his or her injury. If it is determined that any specific plaintiff did use reasonable diligence, the discovery rule then requires it to be determined when that plaintiff would reasonably have discovered the cause of their injury. Although it has been suggested that discovery occurs when a reasonably diligent plaintiff subjectively makes a discovery, *see, e.g., Hammack*, 914 F.Supp. at 306 (noting two differ-

ent interpretations of Wisconsin discovery rule), the most recent supreme court decision follows the objective standard, *Claypool*, 209 Wis. 2d at 302–03, 562 N.W.2d at 592. We therefore instruct the trial court to follow the objective standard.

*By the Court.*—Judgment reversed and cause remanded with directions.