COURT OF APPEALS
DECISION
DATED AND FILED

July 25, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2022AP1013**

STATE OF WISCONSIN

Cir. Ct. No. 2021CV7135

IN COURT OF APPEALS
DISTRICT I

---

DESTINY MOTORS CORP., MOHAMMAD AMIR AND ERIC WOELBING,

PETITIONERS-APPELLANTS,

V.

WIS. DEPT. OF ADMIN. - DIVISION OF HEARINGS AND APPEALS
AND WISCONSIN DEPARTMENT OF TRANSPORTATION,

RESPONDENTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Milwaukee County: CHRISTOPHER R. FOLEY, Judge. *Affirmed.*

Before Brash, C.J., Donald, P.J., and White, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  Destiny Motors Corp., Mohammad Amir, and Eric Woelbing (collectively, Destiny Motors) appeal a circuit court order affirming an order of the Wisconsin Department of Administration, Division of Hearing and Appeals (the division).  The division affirmed the decision of the Wisconsin Department of Transportation (the department) to cancel the motor vehicle buyer licenses of Amir and Woelbing, who are employed by Destiny Motors Corp., a licensed motor vehicle wholesaler.  The department canceled these buyer licenses after determining that Wisconsin law does not permit the issuance of buyer licenses to employees of wholesalers that do not hold a motor vehicle dealers license. Destiny Motors argues that the department's interpretation of the relevant statute is incorrect.  Because we agree that the department's interpretation is correct and that the relevant statutory provisions are unambiguous, we affirm the orders of the division and the circuit court.

## BACKGROUND

¶2      The department first began issuing motor vehicle buyer licenses in 2003, following the legislature's decision to amend Chapter 218 of the Wisconsin Statutes to impose restrictions on who could bid on and purchase vehicles at auctions.  *See* 2003 Wis. Act 216; WIS. STAT. § 218.34 (2021-22).[1]  This newly added provision prohibited anyone from purchasing or bidding at motor vehicle auctions unless they held "a valid motor vehicle dealer, motor vehicle wholesaler, or motor vehicle buyer license."  Sec. 218.34(1)(a).  In turn, 2003 Wis. Act 216 defined a motor vehicle buyer as "an individual who is employed by or who has

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.  We further note there have been no changes to the relevant statutory provisions since their enactment or amendment in 2003.

contracted with one or more motor vehicle dealers to bid on or purchase a motor vehicle being held and offered for sale by a motor vehicle dealer or a motor vehicle auction." WIS. STAT. § 218.0101(22m). Finally, 2003 Wis. Act 216 amended Chapter 218 to prohibit a motor vehicle wholesaler from engaging in business as a motor vehicle dealer "without a license therefor." WIS. STAT. § 218.0114(1).[2]

¶3      For the first seventeen years following the enactment of these new statutory requirements, the department issued motor vehicles buyer licenses to the employees of wholesalers. In early 2021, the department determined that the relevant statutory provisions "excluded wholesalers from sponsoring a motor vehicle buyer's license, and therefore, the [d]epartment's practice of issuing motor vehicle buyer's licenses to employees of wholesalers was improper." Accordingly, by letters dated March 22, 2021, the department notified wholesalers who had erroneously received motor vehicle buyer licenses that these licenses would be canceled effective April 15, 2021. The department sent these cancellation letters to hundreds of wholesalers in Wisconsin. No affected entity or

---

[2] This statute provides:

> No motor vehicle dealer, <u>motor vehicle wholesaler,</u> motor vehicle salesperson<u>, motor vehicle buyer,</u> or sales finance company may engage in business as a motor vehicle dealer, <u>motor vehicle wholesaler,</u> motor vehicle salesperson<u>, motor vehicle buyer,</u> or sales finance company in this state without a license therefor as provided in ss. 218.0101 to 218.0163. If any motor vehicle dealer acts as a motor vehicle salesperson, he or she shall secure a motor vehicle salesperson's license in addition to a motor vehicle dealer license. Every motor vehicle dealer shall be responsible for the licensing of every motor vehicle salesperson <u>or motor vehicle buyer</u> in his or her employ.

WIS. STAT. § 218.0114(1) (emphasis added).

person other than Destiny Motors appealed these cancellations, formally or informally.

¶4    Destiny Motors filed its appeal of the department's decision on April 7, 2021, and requested a hearing before the division. Following a hearing, the division affirmed the department's decision to cancel the licenses. Destiny Motors then filed a petition for judicial review of the division's decision. The circuit court issued a decision and order affirming the division's decision upholding the department's cancellation of the buyer licenses. Destiny Motors now appeals the circuit court's decision and order.

## STANDARD OF REVIEW

¶5    In an appeal of an administrative decision under WIS. STAT. § 227.52, we review the decision of the division, though we may benefit from the circuit court's analysis. *City of Mayville v. DOA*, 2021 WI 57, ¶16, 397 Wis. 2d 496, 960 N.W.2d 416; *see also* WIS. STAT. § 227.46(2m) ("The decision of the administrator of the division of hearing and appeals is a final decision of the agency subject to judicial review under s. 227.52.") In our review, we may not "substitute our judgment for that of the agency as to the weight of the evidence on any disputed finding of fact" so long as the finding of fact that is "supported by substantial evidence in the record." WIS. STAT. § 227.57(6). However, we owe no deference to the agency's interpretation of law. Sec. 227.57(11). "When reviewing questions of law decided by an agency, including statutory interpretation, our review is de novo." *DOR v. Microsoft Corp.*, 2019 WI App 62, ¶13, 389 Wis. 2d 350, 936 N.W.2d 160.

**DISCUSSION**

*1. The relevant statutory provisions did not authorize the department to issue these buyer licenses.*

¶6    This appeal requires us to examine the provisions of Chapter 218 of the Wisconsin Statutes that authorize the department to issue motor vehicle buyer licenses.  As Destiny Motors points out, Chapter 218 has been frequently amended to add additional categories and rules, resulting in "a statute that is sometimes confusing and indirect."  Our analysis focuses in particular on two sets of amendments to Chapter 218:  2003 Wis. Act 216, which created a new category of licensure for motor vehicle buyers, who can bid on and purchase vehicles at motor vehicle auctions, *see* WIS. STAT. § 218.34, and 2003 Wis. Act 76, which created a new category of licensure for motor vehicle wholesalers.  *See* WIS. STAT. § 218.0101(38).

¶7    "[S]tatutory interpretation 'begins with the language of the statute.'"  ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted).  "[O]ur analysis ends there if the meaning is plain."  ***Lake Beulah Mgmt. Dist. v. DNR***, 2011 WI 54, ¶24, 335 Wis. 2d 47, 799 N.W.2d 73.  "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results."  ***Kalal***, 271 Wis. 2d 633, ¶46 (citations omitted).  In interpreting a statute, we "may not add words to the statute's text."  ***DWD v. LIRC***, 2017 WI App 68, ¶23, 378 Wis. 2d 226, 903 N.W.2d 303.

¶8    The department argues that WIS. STAT. § 218.34(1)(a) unambiguously authorizes it to issue buyer licenses to employees of motor vehicle

dealers, but not to employees of motor vehicle wholesalers. We agree with the department, because the definition of a motor vehicle buyer in § 218.34(1)(a) plainly refers to employees of motor vehicle dealers and does not include employees of motor vehicle wholesalers. In contrast, in the same act that created this provision restricting buyer licenses to the employees of motor vehicle dealers, the legislature amended the licensing requirement in Chapter 218 to distinguish motor vehicle wholesalers from motor vehicle dealers. *See* 2003 Wis. Act 216, § 3 (amending WIS. STAT. § 218.0114(1) to provide that "No motor vehicle dealer, motor vehicle wholesaler, motor vehicle salesperson, motor vehicle buyer, or sales finance company may engage in business as a motor vehicle dealer, motor vehicle wholesaler, motor vehicle salesperson, motor vehicle buyer, or sales finance company in this state without a license" as provided in this chapter" (emphasis added)).[3]

¶9  We cannot add the phrase "or wholesalers" to the text of WIS. STAT. § 218.34(1)(a). *See DWD*, 378 Wis. 2d 226, ¶23. Because the legislature clearly distinguished between these two types of entities in other provisions of 2003 Wis. Act 216, we conclude that § 218.34(1)(a) plainly excludes employees of motor vehicle wholesalers from obtaining buyer licenses unless they are also employed by or contracting with a motor vehicle dealer. *Lake Beulah Mgmt. Dist.*, 335 Wis. 2d 47, ¶24 (explaining that statutory interpretation ends with the language of the statute "if the meaning is plain").

---

[3] Destiny Motors argues that the department's reading of this statutory provision is unreliable because WIS. STAT. § 218.0114(1) "does not explicitly state that each defined category has its own 'respective' or 'corresponding' license." Destiny Motors appears to be overlooking the word "therefor" which means "for that object or purpose." OXFORD DICTIONARY OF ENGLISH (3d. ed. 2010).

¶10     Destiny Motors makes several arguments for why WIS. STAT. § 218.34(1)(a) should be read to encompass employees of motor vehicle wholesalers, even though the plain language of the statute only refers to employees of motor vehicle dealers.     First, Destiny Motors points to the "extremely broad definition" of motor vehicle dealers set forth in WIS. STAT. § 218.0101(23)(a).[4]     Based on this definition, Destiny Motors argues that it is in

---

[4]  This statute provides:

> (a) "Motor vehicle dealer" means any person, firm or corporation, not excluded by par. (b) who:
>
> 1. For commission, money or other thing of value, sells, leases, exchanges, buys, offers or attempts to negotiate a sale, consumer lease or exchange of an interest in motor vehicles; or
>
> 2. Is engaged wholly or in part in the business of selling or leasing motor vehicles, including motorcycles, whether or not the motor vehicles are owned by that person, firm or corporation.
>
> (b) The term "motor vehicle dealer" does not include:
>
> 1. Receivers, trustees, personal representatives, guardians, or other persons appointed by or acting under the judgment or order of any court.
>
> 2. Public officers while performing their official duties.
>
> 3. Employees of persons, corporations or associations enumerated in subds. 1. and 2., when engaged in the specific performance of their duties as employees of the enumerated persons, corporations or associations.
>
> 4. Sales finance companies or other loan agencies who sell or offer for sale motor vehicles repossessed or foreclosed on by those sales finance companies or other loan agencies under terms of an installment contract, or motor vehicles taken in trade on such repossessions.
>
> 5. Sales finance companies when engaged in purchasing or otherwise acquiring consumer leases from a motor vehicle dealer, or in renegotiating consumer leases previously purchased or otherwise acquired by them.

(continued)

fact a motor vehicle dealer because it is "engaged wholly or in part in the business of selling or leasing motor vehicles." Sec. 218.0101(23)(a)2. This argument goes nowhere, because 2003 Wis. Act 216 amended Chapter 218 to explicitly prohibit motor vehicle wholesalers from engaging in business as a motor vehicle dealer "without a license therefor." *See* 2003 Wis. Act 216, § 1 (amending WIS. STAT. § 218.0114(1)). Destiny Motors is not licensed as a motor vehicle dealer. Therefore, Destiny Motors can only engage in business as a wholesaler, and not as a motor vehicle dealer.

¶11 Our conclusion is underscored by the definition of wholesaler in Chapter 218. A wholesaler is defined as

> a person, <u>other than a licensed motor vehicle dealer</u> or licensed motor vehicle auction dealer, who does any of the following:
>
> **1.** Sells more than 5 used motor vehicles in any 12-month period to one or more motor vehicle dealers, motor vehicle auction dealers, or salvage dealers.
>
> **2.** Except as provided in par. (b), purchases used motor vehicles from a motor vehicle dealer or at a motor vehicle auction for the purpose of selling the vehicles to a motor vehicle dealer, motor vehicle auction, or wholesaler.
>
> **3.** Except as provided in par. (b), purchases used motor vehicles on behalf of a motor vehicle dealer.

WIS. STAT. § 218.0101(38) (emphasis added).[5] Thus, the very definition of a wholesaler excludes licensed motor vehicle dealers. Because Destiny Motors is

---

WIS. STAT. § 218.0101(23).

[5] The exception in paragraph (b) provides:

(continued)

not a licensed motor vehicle dealer, Destiny Motors is not permitted to engage in the business of a motor vehicle dealer. *See* WIS. STAT. § 218.0114(1). That same subsection expressly states that the business of a motor vehicle dealer includes responsibility "for the licensing of every … motor vehicle buyer in [its] employ." *Id*. We must interpret "statutory language … in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Kalal*, 271 Wis. 2d 633, ¶46 (citations omitted).

¶12    Context is particularly compelling here, because the legislature defined buyers as employees of motor vehicle dealers at the same time that it amended WIS. STAT. § 218.0114(1) to distinguish wholesalers from motor vehicle dealers. *Compare* 2003 Wis. Act 216, § 1 (creating WIS. STAT. § 218.0101(22m) (defining a motor vehicle buyer as "an individual who is employed by or who has contracted with one or more motor vehicle dealers …") *with* 2003 Wis. Act 216, § 3 (amending § 218.0114(1) to prohibit motor vehicle wholesalers from engaging in the business of motor vehicle dealers "without a license therefor[.]") Destiny Motors is asking us to interpret one provision of 2003 Wis. Act 216 in a way that directly contradicts another provision of that same act. Doing so would run afoul of our supreme court's instruction that we should interpret statutes "in relation to

---

> A person is not a wholesaler or a wholesale dealer if the person is employed by and receives compensation from only one motor vehicle dealer for services relating to the sale or purchase of motor vehicles and the person conducts all financial transactions involving the sale or purchase of motor vehicles in the name of the motor vehicle dealer that employs him or her, under the supervision of the motor vehicle dealer that employs him or her, and using the motor vehicle dealer's funds or financial accounts.

WIS. STAT. § 218.0101(38)(b).

the language of surrounding or closely-related statutes." ***Kalal***, 271 Wis. 2d 633, ¶46.

¶13    Destiny Motors argues that even though a wholesaler is not a "licensed motor vehicle dealer," a wholesaler is nonetheless "a specialized variety of motor vehicle dealer." According to Destiny Motors, "the division [between dealers and wholesalers] occurs at the point of licensure, with those dealers meeting the requirements for a 'general dealer's license' no longer being defined as wholesalers once licensed." The problem with this argument is that it lacks support in either the text or the history of Chapter 218. As the department points out, the term "general dealer" does not appear anywhere in Chapter 218. Thus, there is no such thing as a "general dealer's license."

¶14    The history of Chapter 218 further contradicts Destiny Motors' assertion that a wholesaler is just a subset of motor vehicle dealer.[6] The current statutory definition of wholesaler was enacted in 2003. *See* 2003 Wis. Act 76, § 4 (creating WIS. STAT. § 218.0101(38)). Prior to this amendment to Chapter 218, the term "wholesaler" was used interchangeably with distributor to refer to an entity that "sells or distributes <u>new</u> motor vehicles to motor vehicle dealers." *See* 2003 Wis. Act 76, § 1 (amending WIS. STAT. § 218.0101(6) (2001-02)) (emphasis added). This history suggests that the legislature created the separate category of wholesaler as a pathway for distributors to enter the used vehicle market, subject to specific licensure and bonding requirements. *See* § 218.0101(38). Moreover, at

---

[6] Although "legislative history need not be and is not consulted except to resolve an ambiguity in statutory language," we may consult legislative history "to confirm or verify a plain-meaning interpretation." ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶51, 271 Wis. 2d 633, 681 N.W.2d 110.

the same time the legislature established wholesalers as a separate category, it also clearly distinguished this new category of wholesalers from the existing category of motor vehicle dealers, by imposing a $25,000 bond requirement for wholesalers and a $50,000 bond requirement for motor vehicle dealers. *Compare* 2003 Wis. Act 76, § 6 (creating WIS. STAT. § 218.0114(5)(c)) *with* 2003 Wis. Act 76, § 5 (amending § 218.0114(5)(a)).

¶15      Nothing in the definition of wholesalers, or elsewhere in 2002 Wis. Act 76, indicates that wholesalers were intended to be a subspecialty of motor vehicle dealers. To the contrary, the legislature defined a wholesaler as a person who "purchases used motor vehicles from a motor vehicle dealer or at a motor vehicle auction for the purpose of selling the vehicles to a motor vehicle dealer, motor vehicle auction, or wholesaler." WIS. STAT. § 218.0101(38)(a)2. If the legislature intended for a "wholesaler" to be just a subspecialty of "motor vehicle dealer," then the phrase "or wholesaler" would be redundant. Thus, Destiny Motors' argument runs afoul of the general canon that statutes should be interpreted "so that no word or clause shall be rendered surplusage and every word if possible should be given effect." *State v. Martin*, 162 Wis. 2d 883, 894, 470 N.W.2d 900 (1991) (citation omitted).

¶16      Finally, we agree with the department that Destiny Motors' reliance on the extremely broad definition[7] of motor vehicle dealers in WIS. STAT. § 218.0101(23)(a) would "gut the functioning of WIS. STAT. § 218.34." Specifically, § 218.34(a) only authorizes licensed motor vehicle dealers, motor

---

[7] Destiny Motors concedes that this definition "includes nearly all those in the business of selling cars."

vehicle wholesalers, or motor vehicle buyers to bid on or purchase vehicles at auction. Yet under Destiny Motors' interpretation, employees of any other entity in the motor vehicle supply chain could become licensed as buyers and be able to bid on and purchase vehicles at auction. We must construe statutes to avoid unreasonable results, and it is unreasonable to believe that the legislature intended that every entity in the supply chain, whether licensed as a motor vehicle dealer or not, would be able to purchase vehicles at auction using licensed buyers. *See Kalal*, 271 Wis. 2d 633, ¶46 ("[S]tatutory language is interpreted … reasonably, to avoid absurd or unreasonable results.").

¶17    Destiny Motors also argues that WIS. STAT. § 218.0114(14) permits a wholesaler to operate as a motor vehicle dealer. In making this argument, Destiny Motors relies on a subsection of Chapter 218 that describes how to calculate the fees for various types of licenses. Paragraph (c) of this subsection states that the fee calculation method is the same "[f]or distributors or wholesalers … as for dealers." Sec. 218.0114(14)(c). Paragraph (d) then states that "[a]ny person licensed under … par. (c) may also operate as a motor vehicle dealer, without any additional fee." Sec. 218.0114(14)(d).[8]

---

[8] In making this argument, Destiny Motors points to various subsections of the administrative code, arguing that these regulations confirm its interpretation of WIS. STAT. § 218.0114(14). We disagree that the cited regulations support the argument that a wholesaler can operate as a motor vehicle dealer without being licensed as such. In particular, WIS. ADMIN. CODE § Trans. 138.025(1) requires that a person obtain a motor vehicle dealer's license in order to sell or buy motor vehicles, subject to several exceptions, including an exception for licensed wholesalers. *See* WIS. ADMIN. CODE § Trans. 138.025(2)(g). These regulatory provisions do not convert a licensed wholesaler into a licensed motor vehicle dealer. Instead, these provisions confirm the department's interpretation that Chapter 218 sets forth distinct categories of licensure for different types of activities.

¶18 The department argues that this subsection is plainly a fee provision and not a licensure provision. As such, paragraph (d) does not affect the requirement in WIS. STAT. § 218.0114(1) that an entity can only engage in business as a motor vehicle dealer if it has a motor vehicle dealer's license. Reading these provisions together, if Destiny Motors wanted to obtain an additional license to operate as a motor vehicle dealer, it would not need to pay an additional license fee to do so.

¶19 We agree with the department's reading of WIS. STAT. § 218.0114(14)(d). Destiny Motors' interpretation of this provision would mean that an entity licensed as a wholesaler could engage in the business of a motor vehicle dealer, without being subject to the higher bonding requirement. *Compare* WIS. STAT. § 218.0114(5)(c) (imposing a $25,000 bond requirement on wholesalers) *with* § 218.0114(5)(a) (imposing a $50,000 bond requirement on motor vehicle dealers). The parties also agree that a wholesaler's license "is easier to obtain" than a motor vehicle dealers license. Interpreting Chapter 218 to give a wholesaler the same statutory treatment as a motor vehicle dealer without satisfying the more difficult licensing process yields an absurd or unreasonable result. *See Kalal*, 271 Wis. 2d 633, ¶ 46 ("[S]tatutory language is interpreted … reasonably, to avoid absurd or unreasonable results.").

¶20 Moreover, the department's interpretation of the statute is consistent with our decision in *Ford Motor Co. v. Lyons*, 137 Wis. 2d 397, 405 N.W.2d 354 (Ct. App. 1987), in which we considered whether plaintiffs who were not licensed as motor vehicle dealers had standing to sue under a statute designed to protect motor vehicle dealers from unconscionable practices by automobile manufacturers. *Id*. at 431-32. The plaintiffs argued that because their activities fell within the broad definition of motor vehicle dealers, "we should read the

licensing requirement liberally and hold that all purported motor vehicle dealers, licensed or not, may maintain an action" against the manufacturer. *Id*. at 434. We rejected this argument, explaining that the plaintiffs who were not licensed as motor vehicle dealers were seeking to "invoke the remedies and protections of the very licensing statute with which they had failed to comply." *Id*. at 436. We further held that even those claimants who were licensed under different provisions of Chapter 218 were unable to "claim rights or authority beyond such license." *Id*. at 437. Instead, we concluded that "[t]he scope of the right given by the license … must be restricted to the four corners of the license." *Id*. Here, we similarly interpret Chapter 218 as creating separate and distinct categories of licensure, and we decline to interpret the statute in a way that would permit Destiny Motors to claim the benefits of being a motor vehicle dealer without being licensed as such.

¶21 Finally, Destiny Motors suggests that our interpretation of the phrase "motor vehicle dealer" in WIS. STAT. § 218.0101(22m) will lead to a variety of absurd or unreasonable results in other provisions of Chapter 218, as well as in the administrative regulations interpreting this statute. Our conclusion here is a narrow one: specifically, § 218.0101(22m) does not authorize the department to issue buyer licenses to the employees of entities that are not licensed as motor vehicle dealers. Because the meaning of the specific statutory provisions created and amended by 2003 Wis. Act 216 is plain, our analysis ends there. *Lake Beulah Mgmt. Dist.*, 335 Wis. 2d 47, ¶24. We therefore reject Destiny Motors' assertion that our interpretation of these provisions will have ripple effects throughout Chapter 218.

*2. The department had authority to cancel the buyer licenses.*

¶22     Destiny Motors offers five additional arguments for why the department exceeded its authority in canceling the buyer licenses.    Having concluded that WIS. STAT. § 218.0101(22m) unambiguously permits the employees of motor vehicle dealers, but not wholesalers, to be licensed as buyers, we can easily dispose of these remaining arguments.

¶23     First, Destiny Motors argues that the department was required to use the formal rulemaking process before cancelling the buyer licenses that were issued to the employees of wholesalers.  *See Schoolway Transp. Co. v. DMV*, 72 Wis. 2d 223, 233-34, 240 N.W.2d 403 (1976) ("When a party files an application for a license with an administrative agency and the latter points to some announced agency policy of general application as a reason for rejecting the application, such announced policy constitutes a rule[.]")

¶24     The *Schoolway* decision fully supports the department's license cancellation.   Like the present case involving an erroneous licensing decision, *Schoolway* involved an erroneous registration decision by the department.  *Id*. at 236.  Our supreme court agreed that the department had acted outside its statutory authority and was obligated "to bring its practices into conformity with the plain meaning of that statute."  *Id*.   The court further explained that administrative rulemaking is not required unless a statute is ambiguous and needs interpretation. *Id*. at 235-36.  Because we similarly conclude that the department clearly acted outside its authority in issuing buyer licenses to employees of wholesalers not licensed as motor vehicle dealers, no administrative rulemaking is necessary.  *Id*.

¶25    Second, Destiny Motors argues that the department was required to hold a hearing before canceling the licenses at issue.  *See* WIS. STAT. § 227.10(2m), which provides that, with limited exceptions not relevant here,

> No agency may implement or enforce any standard, requirement, or threshold, including as a term or condition of any license issued by the agency, unless that standard, requirement, or threshold is explicitly required or explicitly permitted by statute or by a rule that has been promulgated in accordance with this subchapter.

For our purposes, the operative phrase is "unless that standard, requirement, or threshold is explicitly required."  Here, a motor vehicle wholesaler is explicitly required to be licensed as a motor vehicle dealer in order to engage in the business of a motor vehicle dealer.  *See* WIS. STAT. § 218.0114(1).  In turn, a motor vehicle buyer is explicitly required to be employed by a motor vehicle dealer.  *See* WIS. STAT. § 218.0101(22m).  Because the department was enforcing requirements that are explicitly required by statute, WIS. STAT. § 227.10(2m) does not apply.

¶26    Third, Destiny Motors argues that the department lacks authority to cancel the buyer licenses.  When the department canceled the buyer licenses as unlawfully issued, the department relied on its statutory authority to "have supervision over the licensees in respect to all of the provisions of ss. 218.0101 to 218.0163[.]"  WIS. STAT. § 218.0111(1).  The department contends that this supervisory authority is broad and "necessarily includes the ability to cancel unlawful licenses."  In addition, the department points to our supreme court's statement in ***Schoolway*** that, because the department had acted outside its statutory authority in granting certain registrations, the department was obligated to cancel those registrations in order "to bring its practices into conformity with the plain meaning of the statute." ***Schoolway***, 72 Wis. 2d at 236.

16

¶27 Destiny Motors argues that the department's authority to exercise its supervisory power in this manner was circumscribed in 2011, when the legislature enacted WIS. STAT. § 227.10(2m). According to Destiny Motors, this 2011 statute eliminated any implied powers of the department, including the power to cancel licenses. *See Wisconsin Legislature v. Palm*, 2020 WI 42, ¶51, 391 Wis. 2d 497, 942 N.W.2d 900. We have already explained that the department's action in enforcing an explicit requirement of licensure falls within the exceptions to WIS. STAT. § 227.10(2m). Therefore, *Palm* adds nothing to Destiny Motors' argument.

¶28 Fourth, Destiny Motors points to WIS. STAT. §§ 218.0116(1) and (4), which "respectively limit how and why the Department may revoke licenses." Here, Destiny Motors contends that the department is using cancellation as a "verbal sleight-of-hand" to freely exercise a power that the legislature has restricted. The department contends that the cited revocation provisions are inapplicable because they pertain to misconduct. Here, the parties agree that neither Destiny Motors nor the two buyers engaged in any misconduct. The division therefore found that the department "had no legal grounds upon which to suspend or revoke" the buyer licenses. Destiny Motors fails to address this argument in its reply brief and instead merely repeats its assertion that revocation and cancellation are the same thing. *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (explaining that the failure to refute an argument may be taken as a concession). We therefore agree with the department that its statutory power to revoke licenses for misconduct is separate from its supervisory authority to cancel licenses that the department issued unlawfully.

¶29 Fifth, Destiny Motors contends that the department could have decided not to enforce the statutory requirements and could have allowed the unlawfully issued buyer licenses to remain in effect. *See Baer v. DNR*, 2006 WI

17

App 225, ¶16, 297 Wis. 2d 232, 724 N.W.2d 638. In *Baer*, this court interpreted a statute that provided that "[i]f the department learns of a possible violation … the department may proceed" with enforcement. *Id*. (quoting WIS. STAT. § 30.03(4)(a)). We concluded that this statute gave the department prosecutorial discretion. Here, in contrast, the relevant statute provides that the department "shall … have supervision over the licensees in respect to all the provisions of ss. 218.0101 to 218.0163," subject to exceptions not relevant here. WIS. STAT. § 218.0111(1) (emphasis added). In contrast to the discretionary language in *Baer*, the department's obligation to act is plain. Interpreting the statutes in a way that would require the department to honor unlawfully issued licenses would lead to absurd results. *Kalal*, 217 Wis. 2d 633, ¶46.

## CONCLUSION

¶30 For the foregoing reasons, we affirm the order of the circuit court affirming the division's order that upheld the department's cancellation of the buyer licenses.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.[9]

---

[9] We note our concern about the unprofessional briefing submitted by Destiny Motors. We considered counsels' frivolous and unwarranted commentary to be disrespectful to this court and the appellate process. The unnecessary commentary was distracting and placed an unwarranted burden on the court to discern the party's "facts relevant to the issues presented for review" and the party's legal authority for its arguments. *See* WIS. STAT. RULE 809.19(1). We decline to impose a sanction under WIS. STAT. RULE 809.32(2), but we give counsel notice to not repeat this frivolity.